The appeal is quashed at the costs of the appellant.

## Appeal of Mellon et al.

1. Collateral inheritance tax accrues at the decease of the person whose estate, passing to collateral heirs or strangers is subject to the tax; and this is so whether the estate passes in actual enjoyment, directly or remotely upon the termination of an intervening life estate, or term of years.

2. Although under the Act of March 11th, 1850, P. L. of 1849, 153, and its supplement of May 4th, 1855, P. L. 425, the remainderman may postpone the payment of collateral inheritance tax until he comes into possession, the time when the tax accrues is not changed by them.

3. If the Commonwealth neglects to proceed to collect collateral inheritance tax for a period of twenty years after the death of the decedent, a conclusive presumption of payment arises as to *bona fide* purchasers from those to whom the remainder in fee descended; and the lien theretofore existing in favor of the Commonwealth forthwith ceases as to such persons.

4. The failure to commence proceedings for the ascertainment and ultimate collection of collateral inheritance tax due to the fact that there was no administration of the estate of the decedent, and thus the matter was not brought to the attention of the register creates no exception to the law limiting the right to commence such proceedings to a period of twenty years.

5. The statute limiting the right to proceed to collect collateral inheritance tax to a period of twenty years after it had accrued, is a statute of repose and should be construed in favor of *bona fide* purchasers.

6. A. was siezed of an undivided one third interest in certain real estate, by his death a collateral inheritance tax accrued to the Commonwealth by the devolution of his undivided interest to his collateral heirs, his co-tenants. After his death partition of all of said real estate was made among his collateral heirs, his co-tenants. The purpart allotted to one of them was sold on a judgment against himself by the sheriff, and a sum realized therefrom in excess of the amount needed to pay all of the collateral inheritance tax accrued upon all the real estate. The Commonwealth made no claim on the fund on distribution for the collateral inheritance tax, and it was distributed to other liens. *Held*, (*a*) That the partition of said real estate did not have the effect of apportioning the lien of said collateral inheritance tax. (*b*) The lien of the whole of the said collateral inheritance tax upon the whole of the real estate was divested by the said sheriff sale.

November 4th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

APPEAL from the Orphans' Court of *Allegheny county:* Of October Term 1886, No. 144.

In the court below these were the appeals:

Appeals of Mary F. Beatty, A. Dempster, John S. Wilson, Isabella C. Sargent, George R. Stewart, Seth. F. Stewart, Mary M. Stewart, B. L. H. Dabbs, Celina Wilson, S. M. Hawksworth, Benjamin H. Peabody, E. M. Bigelow, Mary C. Bigelow, T. S. Bigelow, Robert Thomson, Robert E. Stewart, James R. Mellon (*et al.*), James E. Rogers, Eliza Russell, Catherine McAfee, Elizabeth Rheem, Jennie Addy, Elizabeth J. Baird, B. L. Wood, Jr., R. F. Bialas, and Harriet L. Rook, from the valuation of the appraiser of the real estate of which Annie B. Beatty died seized, and the assessment of collateral inheritance tax thereon by the register.

The following is the statement of the court below, OVER, J., referred to in the opinion of the Supreme Court. .

These appeals are from the assessment of the collateral inheritance tax on the real estate of Annie B. Beatty, deceased. She derived title through her mother, Isabella M. Beatty, who died intestate, March 2d, 1849, seized of a tract of 57 acres of land lying in one body in Peebles township, now 19th ward, city of Pittsburgh, leaving to survive her Doctor R. C. Beatty, her husband, and three children, Robley D., Bell C., and Annie B. Beatty, the decedent. She died July 31st, 1864, intestate, unmarried and without issue. By order of the Orphans' Court, Doctor Beatty as guardian of Robley D. and Bell C. Beatty, on the 31st of March, 1866, made private sale of three acres of this tract fronting on Hiland avenue for the purpose of providing a fund for the education of the minors, and to pay an assessment of $1,050.25 for the improvement of the

avenue. This property is now owned by T. S. Bigelow, Esq. By quit claim deed, dated March 9th, 1870, Doctor Beatty released his life estate in a part of the tract fronting 990 feet on Hiland avenue, and extending in depth 760 feet to Robley D. and Bell C. Beatty; and by deed of same date in consideration of this release they conveyed 240 feet front on the avenue by 700 feet in depth, to him. He died April 18th, 1872, aged 58 years, testate, having devised the land conveyed to him as above to Richard H. and Mary F. Beatty, his children by a subsequent marriage. By proceedings in the Orphans' Court, partition of this land was made between them. Richard H. Beatty's purpart was sold at sheriff's sale for $7,400, the deed to the purchaser being acknowledged October 7th, 1876. This sale includes lots 53, 54, 55, 56, 57, 58, 59, 60, 61, 62 and 64 in the appraiser's list. Mellon conveyed subdivisions of this purpart to various persons, and Mary F. Beatty also conveyed subdivisions of her purpart.

Partition was made between Robley D. and Bell C. Beatty of the land released by their father to them by proceedings in the Orphans' Court, the final decree being entered on the 30th of September, 1871. It was subdivided into two purparts each taking one, and these purparts were subdivided into lots as shown by the plan in the partition proceedings, and some of these lots were sold by them prior to the father's death. The following sheriff's sales were made of these subdivisions:

Lot No. 1 in the appraiser's list, fronting 130 feet on Hiland avenue by 241 on Stanton avenue, was sold in October, 1877, for $14,000, which was distributed to lien creditors.

Lot No. 6 was sold on the 11th of April, 1884, for $1,200, and the net proceeds, $1,089.31, applied to the plaintiff's payment.

Lot included in No. 22, fronting 60 feet on Euclid street, beginning 83 feet from Jackson, on December 22d, 1877, for $50, which was applied to costs. Lot 17, on January 31st, 1880, for $50, which was applied to costs. The conveyances between Doctor Beatty and his children included twenty-four acres of the tract. The remaining thirty acres, after his death were subdivided into lots and two tracts, one containing $6\frac{2}{10}$ acres and the other $7\frac{1}{4}$ acres.

The following sheriff's sales were made of these subdivisions: Lot No. 46 in appraiser's list, 100 feet on Negley avenue by 120 feet on Jackson street, on April 11th, 1884, the net proceeds being $415.22. Lot included in 44 and 45 of appraiser's list, 50 feet on Negley avenue by 120 feet deep, on April 11th, 1884, the net proceeds being $207.20. Lot No. 43 in the appraiser's list was sold by the administrator of R. D. Beatty, deceased, by order of the Orphans' Court, for the payment of

his debts, on November 17th, 1877, for $900, to N. C. Beatty; as whose property it was also sold by the sheriff on June 16th, 1883, for $203.

Lot 51 in the appraiser's list being the $7\frac{1}{4}$ acre tract, was sold by the sheriff on the first Monday of December, 1885, for $3,100, as the purchase money being in his hands for distribution.

At Dr. Beatty's death, April 18th, 1872, there were no actual subdivisions made, on the ground of the tract and no streets actually opened except Hiland avenue, on which it fronted. But the city engineer had, prior to his death, made a plan and survey of the street, or laid out in the plan in the partition proceedings between Robley D. and Isabella Beatty, which councils had approved. The property was then used for gardening and dairy purposes, although some lots had been sold. The fair valuation, as of April 18th, 1872, of the undivided one third of the property, as it was then subdivided by the plans and conveyances, is as follows:

The tract fronting on Hiland avenue, 240 feet, and extending in depth 700 feet, containing four acres, conveyed to Doctor Beatty, and which includes Nos. 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63 and 64 in the appraiser's list, $4,200.

The tract fronting on St. Clair street, 546 feet, which includes Nos. 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 and 51 in the appraiser's list, and contains 30 acres, $3,600.

The tract fronting 179 feet on Hiland avenue and extending in depth 755 feet, containing three acres, being No. 7 in the appraiser's list, $2,700; lot No. 1 in the appraiser's list, $1,840; lot No. 2, $1,360; lot No. 3, $1,000; lot No. $3\frac{1}{2}$, $105; lot No. 4, $400; lot No. 5, $425; lot No. 6, $185; lot No. 8, $752; lot No. 9, $694; No. 10, $225; No. 11, $113; No. 12, $225; No. 13, $500; No. 14, $150; No. 15, $340; No. 16, $188; No. 17, $112; No. 18, $112; No. 19, $322; No. 20, $954; No. 21, $112; No. 22, $488; No. 23, $112; No. 24, $198; No. 25, $150; No. 26, $150; No. 27, $50; No. 28, $125; No. 65, $414; No. 66, $380; No. 67, $800; No. 68, $2,200; No. 69, $562; No. 70, $700; No. 71, $700; No. 72, $400; No. 73, $450; No. 74, $200; No. 76, $300; No. 77, $600.

The fair valuation of the undivided one third of the whole tract of fifty-seven acres, as of July 31st, 1864, the date of Annie B. Beatty's death, is $6,650.

The appraiser, appointed by the register, made his return on the 25th day of September, 1885, and valued the real estate as of April 18th, 1872, the date of the death of the life tenant.

The court below held and so decreed that the Commonwealth was not barred in proceedings to collect the collateral

inheritance tax, although more than twenty years had elapsed since the death of the decedent, because the collateral inheritance tax did not accrue until the death of the tenant for life when the remainderman came into possession, and this was within twenty years from the time the proceedings in this case were begun. That the lien of the collateral inheritance tax was not divested by the sheriff sale of the purpart allotted in partition to one of the tenants in common, one of the collateral heirs, for the tax at that time had not been appraised, and the Commonwealth had no lien at that time, as the tax accrued after the sales. It was also decreed that the total collateral inheritance tax upon the whole real estate should be assessed as of the date of April 18th, 1872, at the sum of $1,479.65, and that interest should be computed on the same from said date at 12 per centum per annum.

Exceptions were filed to said decree, which were dismissed, whereupon this appeal was taken and the said decree assigned for error.

*William B. Negley, T. C. Lazear* and *R. B. Carnahan, (Brown & Lambie, Jno. C. McCombs, J. S. Strickler, A. H. Clark, W. W. Thompson, R. E. Stewart* and *Knox & Reed* with them), for appellants.

*R. B. Petty*, for the Commonwealth.

Mr. Justice STERRETT delivered the opinion of the court, January 3d, 1887.

The facts which constitute the basis of this contention are so clearly and fully stated by the learned judge of the Orphans' Court, that nothing more than a brief outline thereof, and reference to some of the provisions of our collateral inheritance law, is necessary to a proper understanding of the question involved.

In 1849, Isabella M., wife of Dr. R. C. Beatty, died intestate, seized of 57 acres of land, now in the city of Pittsburgh, leaving as her only heirs at law her husband and three minor children, viz: Annie B., Robley D. and Bell C. Beatty. The land of course descended to the children subject to their father's life estate therein. On July 31st, 1864, Annie B., the eldest daughter, died in her minority, unmarried and without issue, leaving her father, brother and sister surviving her. Subject to the outstanding life estate and charged with the collateral tax or duty, which by the devolution accrued to the Commonwealth, her undivided third interest in the land passed to and rested in her brother and sister. There was no administration of her estate for the reason that she had no personal

property or unsettled accounts. In March 1866, Dr. Beatty as guardian of the surviving children, under direction of the Orphans' Court, sold at private sale three acres of the land for the purpose of paying $1,050, assessment for street improvement, etc. Having in the meantime attained their majority, the son and daughter in March 1870, conveyed four acres of the land to their father, who in consideration thereof released his life estate in about twenty acres of the residue. Dr. Beatty, having thus by purchase become the owner in fee of the four acres, devised the same to Richard and Mary, son and daughter by his second marriage, and died April 12th, 1872. Shortly thereafter, partition was had of the same in the Orphans' Court, and in October 1876, the purpart allotted to Richard was sold at sheriff's sale to James R. Mellon, one of the appellants, for $7,400, which was applied to the execution against Richard on which the sale was made. Mary F. Beatty sold a portion of her purpart and still retained the residue.

Immediately after obtaining release of their father's life estate in the twenty acres, Robley and his sister Bell had partition of the same, and, after subdividing their respective purparts into lots, sold some of them during their father's life time. After his decease, the residue of the land, theretofore subject to his life estate, was divided. With the exception of lots still owned by Bell C. Sargent née Beatty and Mary F. Beatty, respectively, all the other subdivisions of the 57 acres, charged, as to one undivided third thereof, with collateral inheritance tax, was from time to time sold to bona fide purchasers, chiefly by sheriff's sales, aggregating more than sufficient to have paid the entire tax. These sales, public and private, were all made prior to August 1st, 1885, when the first step was taken by the Commonwealth towards the assessment and collection of the collateral inheritance tax. Full details of the proceedings, judicial sales, etc. above referred to, are embodied in the statement accompanying the opinion of the learned judge of the court below.

Upon the facts, of which the foregoing is a synopsis, several questions arise, the most important of which is, when did the tax or duty accrue,—at the decease of Miss Beatty, in 1864, or at the termination of her father's life estate?

The third section of the Act of 1855, declares, "All collateral inheritance taxes not sued for within twenty years after they accrued, shall be presumed to have been paid, and cease to be a lien as against any purchasers of real estate."

If the tax accrued at the time of Miss Beatty's decease, in July 1864, by the devolution of her undivided interest in the land, and the Commonwealth might have proceeded at any time thereafter to have the same appraised and amount of tax

ascertained with the view of its ultimate collection, the lapse of twenty years, without any step having been taken in that direction, raises a conclusive presumption of payment as to *bona fide* purchasers from those to whom the remainder in fee descended; and the lien, theretofore existing in favor of the Commonwealth, forthwith ceased as to such purchasers. It is contended by appellants that the Act, as applicable to the admitted facts of this case, is not susceptible of any other construction. If this be so, the subordinate questions become immaterial, as to all the appellants, except Mrs. Sargent, for the reason that they all occupy the position of *bona fide* purchasers for value and are, therefore, within the protection of the statute.

Without referring specially to the Act of 1826, and other Acts supplementary thereto, prior to 1850, it is very evident from their provisions and the construction given to them in Commonwealth *v.* Smith, 20 Pa. St., 100, and Same *v.* Eckert, 53 Id., 102, that the tax or duty imposed thereby accrues at the decease of the person whose estate, passing to collateral heirs or strangers, is subject to the tax; and this is so, whether the estate passes, in actual enjoyment, directly or remotely upon the termination of an intervening life estate, or term of years. Indeed, it is practically conceded that, under the Acts referred to, the tax on estates in remainder accrues immediately upon the decease of the person from whom the remaindermen derive title, that they are to be then appraised, and, after deducting the value of the life estate, the tax on the remainder is immediately payable to the Register, and, if not paid within one year after decedents' death, interest at the rate of twelve *per centum* per annum from the date of his decease shall be paid. It is furthermore provided that, whenever any such tax shall have remained due and unpaid for one year, the Register shall file a copy of the claim in the Prothonotary's office and proceed to recover the same by *scire facias*, etc., and "there shall be no loss or limitation of the lien for such tax by reason of a failure to file, or sue for the same within any limited time:" P. L. 1849, p. 573.

But, while there can be no doubt as to when the tax accrues under previous legislation, it is contended that a radical change was effected by the Act of 1850, and the supplement of 1855, by which the tax on remainders does not accrue until the termination of the intervening estate, and consequently the limitation contained in the third section of the latter does not commence to run until the remaindermen come into actual possession and enjoyment of their estate.

That important changes in the interest of remaindermen and purchasers were effected by these Acts, more especially by

the supplement, is very clear. The duration of the lien, as to purchasers, is no longer unlimited, as it was under the Act of 1849. As we have already seen, under the 3rd section of the supplement, "All collateral inheritance taxes not sued for *within twenty years after they accrued*" are presumed to have been paid and cease to be a lien as against purchasers; but, neither of them contains any provisions which, under the circumstances of this case, necessarily postpones the time at which the tax accrues from the devolution of estates made subject to the payment thereof. The Act of 1850, recognizing the hardship of requiring remaindermen to pay the tax before, and in many cases long before they came into possession and actual enjoyment of their respective estates, provides, among other things, that upon certain conditions they may "elect to wait their coming into actual possession of the estates or property subject to the tax." One of these conditions is that they "shall make a full return of such property within one year. . . . . . of the death of the decedent, etc. The Act further provides that "the tax on real estate shall remain a lien . . . . . until paid, bearing lawful interest as aforesaid; and no law heretofore passed shall be taken or construed to make any collateral inheritance tax a lien on any other property or estate than those chargeable with such tax."

The first section of the "further supplement" of 1855, declares "the penalty of twelve per cent. per annum imposed for non-payment of the collateral inheritance tax shall not be carried back to a period antecedent to the time when there should by law have been a settlement of the estate, or such part thereof as such tax is chargeable upon; but, where from claims made upon the estate, litigation or other unavoidable cause of delay, the estate of any decedent or any part thereof cannot be settled up at the end of a year from his or her decease, six per cent. per annum shall be charged upon the collateral inheritance tax, from the end of such year until there be default as aforesaid, and paid with the tax: *Provided*, that where the estate, real or personal, withheld in manner aforesaid from the parties entitled thereto, subject to such tax, has not been or shall not be productive to the extent of six per cent. per annum, they shall not be compelled to pay a greater amount as interest to the Commonwealth than they may have realized or shall realize from such estate during the time the same has been or shall be withheld as aforesaid; and provided further, that said penalty shall not be charged on any collateral inheritance tax or any legacy or demise, to come hereafter into actual possession and enjoyment after the expiration of a previous life estate or term of years therein, until the same shall come into actual possession and enjoyment, whether by limit-

ation or power of appointment; and if such legatees or devisees shall elect to pay said tax in anticipation of the same coming into actual possession and enjoyment, the same shall be received at the then valuation of the legacy or devise, deducting the value of the life estate or term of years."

It is evident the first clause of this section, including the first proviso, is applicable only to cases where the settlement of estates is delayed beyond the legally appointed time, "by claims made against the estate, litigation or other unavoidable causes;" and hence it has no direct application to the case before us. The purpose doubtless was to relieve ·collateral heirs and legatees from the twelve per cent. penalty on so much of the estate as is withheld from their actual enjoyment, beyond the usual time, from either of the causes therein mentioned; but, they are nevertheless required to pay, with the tax, six per cent. interest from the end of the year, provided the estate, or part of the estate so withheld, yields that amount; if not, they are not required to pay, as interest, any more than it yields.

The second proviso, in express terms exempts from the twelve per cent. penalty "any collateral tax," of the character therein particularly described, without requiring the remainder men to elect as provided for in the first section of the Act of 1850; but, it does not exempt them from payment of "six per cent. per annum interest on the amount of the tax from the time the same accrued until paid," as required by the same section. No change, as to the time when the tax accrues appears to have been made or contemplated. As previously provided for, the tax accrues upon the devolution of the estate that is subject thereto; and the law contemplates an appraisement as of that date, not only for the purpose of ascertaining the tax on estates that rest in possession and enjoyment immediately, but also for the purpose of determining the amount of tax to be paid on those whose actual possession and enjoyment are deferred until the expiration of an intervening estate or term of years: the latter with interest thereon at the termination of the intervening estate. But, if the legatees or devisees elect to anticipate payment of the tax, the last clause of the second proviso to the first section of the supplement, above quoted, directs that "the same shall be received at the then valuation of the legacy or devise, deducting the value of the life estate or term of years." What is meant by "the then valuation of the legacy or devise," is its value as of the date it vested—the death of the decedent, with six per cent. added thereto. As we have seen, the value of the estate in remainder is to be ascertained by deducting the value of the life estate or term of years from the valuation of the entire estate.

We are therefore of opinion that the tax in question accrued upon the death of Miss Beatty, and that the limitation, as to purchasers, commenced to run at that time.

The several Acts and supplements to which reference has been made are in *pari materia*, and should be construed not with the view of remedying real or supposed defects in either, but so as to harmonize the several provisions of each so far as they are not modified or expressly or by necessary implication repealed. If the law is defective, it should be amended not by strained judicial construction but by the law making power. The failure to commence proceedings for the ascertainment and ultimate collection of the tax in this case within the twenty years was doubtless due to the fact that there was no administration on the estate of Miss Beatty, and hence the matter was not brought to the attention of the Register. In this respect the machinery of the law may be defective; but, we have no right for that reason to make the case an exception to the law limiting the right to sue, or commence proceedings under the Act to a period of twenty years from the time the tax or duty accrued. The Act itself recognizes no such exception, and the limitation clause being a statute of repose in favor of *bona fide* purchasers, it should not be construed unfavorably to them, even if it admitted of any such construction.

If the Register in 1864 had been aware that a tax or duty on Miss Beatty's undivided interest in the land had accrued to the Commonwealth by her death without lineal heirs, there was nothing to have prevented him from causing an appraisement of that interest and of the life estate to be made, thereby ascertaining the value of the estate in remainder that descended to her brother and sister, and thus fixing the amount of the collateral inheritance tax. Under the view we have taken of the law it was his duty to do so. The tax being thus definitely ascertained would have borne interest at the rate of six per cent. per annum until the death of the life tenant; at which time payment of the same with the accrued interest might have been enforced. In the meantime the remainderman would have had a right to anticipate payment and thus satisfy the lien by paying the tax and accrued interest thereon.

It follows from what has been said that at the expiration of twenty years from the death of Miss Beatty, a conclusive presumption of payment arose in favor of the purchasers and as against them the lien ceased.

This disposes of the case as to all the appellants except Mrs. Sargent, *née* Beatty. As to her, the limitation clause does not apply, and that portion of the land, still owned by her, remains subject to the tax lien in favor of the Commonwealth, unless the claim has been actually or constructively paid. It is con-

[Appeal of the Brush Electric Co. et al.]

ceded the tax has never been actually paid; but it is contended that inasmuch as the money, realized from judicial sales of the interest bound by the heir, was more than sufficient to have paid the tax lien and should have been so applied, the claim is constructively paid and the lien discharged. This position appears to be well taken. The Commonwealth was undoubtedly entitled to be first paid out of the fund, and if the tax and accrued interest had been claimed, it would have been paid and the lien satisfied. The fact that the amount of the lien had not been ascertained and fixed cannot affect the result. It was capable of ascertainment, and might have been definitely fixed even after the money applicable to its payment was raised by judicial sale. If the claim had been made, the court would doubtless have retained its grasp on sufficient amount of the fund to pay the tax lien. But, no claim upon the fund was ever made, for the reason doubtless that neither the Register nor the court distributing the fund was aware of the existence of the claim. That fact however did not prevent the discharge of the lien by judicial sales producing funds applicable primarily to the lien, and more than sufficient to pay it.

It matters not that the fund referred to was raised by judicial sales of parts of the portion allotted to Robley D. Beatty in the partition between him and his sister. The tax lien in favor of the Commonwealth rested on the undivided third of the entire tract. The partition did not have the effect of apportioning the lien and thus fixing a part thereof exclusively on Robley's purpart, and the residue on the purpart allotted to his sister.

Without further pursuing the inquiry, we think it follows that the lien for the collateral inheritance tax in question was discharged by the judicial sales referred to in the opinion of the court below.

> Decree reversed at the costs of the appellee, and it is now adjudged and decreed that several appraisements and assessments complained of be set aside and annulled.