No. 10,790.

DIETEMANN, EXECUTRIX, v. PEOPLE, EX REL. BLACKMAN, INHERITANCE TAX COMMISSIONER.

Decided January 5, 1924.

Action to collect an inheritance tax. Judgment for plaintiff.

*Reversed.*

1.  LIMITATION OF ACTIONS—*Statutes—States.* Statutes of limitation ordinarily do not apply to the state, but the legislature may make them applicable.

2.  *Inheritance Tax.* Section 41 of the inheritance tax act of 1902, limiting the time for commencing actions for the col-

lection of the tax to five years after the same is due, is a general limitation and operates as a bar to such suits after the lapse of five years.

3. *Statutes—Construed.* Section 6392, C. L. '21, providing that certain actions shall be commenced within six years next after the cause of action shall accrue, operates as a bar to the institution of an action after the time limited, unless the running of the statute is stayed on some equitable ground.

4. *Statute—Repeal—Effect.* When the bar of a limitation statute once attaches, the legislature by an amending or repealing act may not revive the action.

5. PAYMENT—*Presumption—Lapse of Time—Statute of Limitations.* The presumption of payment arising from lapse of time may be rebutted, but the statute of limitations makes the lapse of time a positive and absolute legal bar.

6. INHERITANCE TAX—*Election of Remedies to Collect.* Where the state may elect one of several remedies for the collection of an inheritance tax, it is bound by its election.

7. *When Due.* Under the inheritance tax act of 1902, the tax is due and payable at the death of decedent, and an action could be brought for its collection at any time thereafter within the time limited, regardless of whether the amount of the tax had been definitely ascertained or not.

8. WORDS AND PHRASES—*"Due and Payable"—"Due and Legally Demandable."* So far as concerns the question of limitation, there is no difference between "due and payable", and "due and legally demandable".

9. TAXES AND TAXATION—*Collection—Neglect of Officers.* Tax collection officers may not neglect their duty in the premises, and thus toll the statute of limitations.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. JOHN W. HELBIG, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. GEORGE HETHERINGTON, Assistant, Mr. HAROLD CLARK THOMPSON, Assistant, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

ANTON SCHINDELHOLTZ died testate April 15, 1902. Letters testamentary were issued to his executrix June 9, 1902. The estate was closed by decree of final settlement April 15, 1907. On July 31, 1915, the estate was reopened and the executrix reinstated only for the purpose of prosecuting an indian depredation claim in the United States Court of Claims. While thus pending and on October 23, 1917, the state inheritance tax commissioner filed in the estate matter a caveat, pursuant to section 23 of the Revenue Act of 1913 (Laws 1913, p. 554). No further action was taken thereon nor was any other proceeding initiated until May 10, 1922, after the executrix, who was sole devisee and legatee, filed a motion to dismiss the caveat. Thereupon and before any ruling on this motion was had, and it seems never to have been determined, the tax commissioner, on June 16, 1922, more than fifteen years after final settlement of the estate and more than twenty years after the testator's death, instituted an inheritance tax proceeding under the provisions of the Act of 1921, apparently abandoning the caveat proceeding. Notice by the tax commissioner was given to Mrs. Dietemann, the executrix, that he, as appraiser, would on June 26, 1922, make an appraisal of the property of the estate which he was empowered to do by section 13 of the act of 1921, and other sections thereof. Hearing was then had, an appraisal of the property was made and the other findings required by the statute were made in duplicate by the commissioner, one for the attorney general, the other for the county court, the latter being filed in the matter of the estate, and on the same day the court, approving the report, made an order assessing and fixing an inheritance tax of about $1,800. Mrs. Dietemann does not now question the propriety of the procedure under the Act of 1921, if any proceeding was permissible at that time. She, however protested against the order and judgment of the county court and filed written objections thereto, which the

county court overruled and she then appealed to the district court, which affirmed the order of the county court and remanded the proceeding to the county court with a transcript of its judgment. Mrs. Dietemann is here with this writ to review that judgment.

The objection below of the executrix, sole devisee and legatee, thereto, and her assignment of error here is, that under section 41 of the Act of 1902 (S. L. 1902, p. 57), which was the governing law at the time of decedent's death, the action or proceeding which resulted in this judgment was not begun within the period of the limitation of that section and not until after the lapse of more than five years from the time the tax was due and legally demandable, and, therefore, any right of action or proceeding to collect the same was barred. That portion of the section which is material here reads: "The lien of the inheritance tax provided herein shall continue until the said tax is settled and satisfied; Provided, That said lien shall be limited to the property chargeable therewith; and Provided, further, That all inheritance taxes shall be sued for within five years after they are due and legally demandable; otherwise they shall be presumed to have been paid, and such lien shall be removed."

The contention of the executrix is that this proceeding or action in behalf of the state is one to collect the tax thus imposed, and, as such, is barred by the limitation of the section which is a general, and not a restricted, limitation. The contention of the tax commissioner is, that though this is a limitation statute, it is qualified or restricted, and even though the action was not begun within the period of five years after the tax was due and legally demandable, only the lien as against subsequent purchasers from the taxpayer is destroyed while the personal liability of the latter to the state continues; but, if not so, and the limitation is a general one against the state and in favor of both the taxpayer and his vendee, the action was begun within the prescribed period.

1.   In *Cullen's Estate*, 142 Pa. 18, 21 Atl. 781 (decided

in 1891), a limitation section of the Pennsylvania statute was construed as intended to quiet the title of purchasers of real estate subject to an inheritance tax, but as not affecting the right of the state to collect from the taxpayer.

In *Hanberg v. Morgan,* 263 Ill. 616, 105 N. E. 720 (decided in 1914, after our statute was enacted), a like decision was made under a similar statute. In *Miller v. Wolfe,* 115 Tenn. 234, 89 S. W. 398 (decided in 1905), under a section containing substantially the same language as the corresponding sections of the Pennsylvania and Illinois statutes, the court said that to confine the limitation of the section to purchasers of real estate from the person liable for the tax, was too narrow, since the evident purpose of the legislature was to establish a general limitation of five years in this class of cases. The Tennessee court further said that the lien of the tax which the statute gives is but a mere incident of the tax and the destruction of the lien necessarily follows when the tax is paid or the right to enforce it is forfeited. The limitation statutes of these three states are substantially in the language of our section 41 down to and including the word "paid", and immediately following that word and in lieu of the words "and such lien shall be removed," the concluding sentence of these three sections are: "and cease to be a lien as against any purchaser of real estate."

Were the language of our section 41 the same as that of the corresponding Pennsylvania and Illinois sections, and had the Illinois courts' construction been made before we borrowed from that state our provision, adherence to the usual custom, to which courts generally conform, would probably lead us to follow the Illinois decisions. The Illinois decisions, however, were not made until after our statute was enacted. Still we might adopt the reasoning of the Illinois courts if the language of our section was the same as that of the Illinois act. A reading of the opinions of both the Pennsylvania and Illinois courts clearly demonstrates that it was upon the italicized language of their acts: "otherwise they shall be presumed to be paid, *and*

*cease to be a lien as against any purchasers of real estate,"*
that their decisions turned, that only the lien as against
purchasers ceased while the personal liability of the tax-
payer remained.  Whilst our General Assembly, in copy-
ing the Illinois statute, generally reproduced the exact lan-
guage, it omitted from our section 41 the very words of
the corresponding Illinois and Pennsylvania sections on
which the courts of these two states restricted the limita-
tion to the subsequent purchaser and denied its applica-
bility to the person primarily liable for the tax.  Since our
section 41 does not contain the language found in the
Pennsylvania and Illinois statutes, on which their courts
base their decisions restricting the limitation to subsequent
purchasers, and the Tennessee court, in construing its sec-
tion, in the exact language of the Pennsylvania and Illinois
law, extended it so as to include the person primarily liable
for the tax, we are not called upon to select as between
conflicting decisions of able courts.  It is apparent that
had the Pennsylvania and Illinois courts been confronted
with a statute like ours, reading: "otherwise they shall be
presumed to have been paid and such lien shall be re-
moved", they probably would have held that the legislature
meant what it said that "All inheritance taxes shall be
sued for within five years after they are due and legally
demandable", and if suit was not brought within that pe-
riod, the right of action thereon was barred.  The state or
its representative is the only party that can bring the suit.
Statutes of limitation ordinarily do not apply to the state
but the legislature may make them applicable to the state
if it sees fit to do so, and it has done that here because the
limitation of five years runs as against the state, and the
tax belongs to the state only.  The language of section 41,
"All inheritance taxes shall be sued for within five years
after they are due and legally demandable" of itself con-
stitutes a general limitation and operates as a bar to the
institution of all suits to collect them brought after the
lapse of five years.  The additional words: "otherwise
they shall be presumed to have been paid, and such lien

shall be removed," were not essential to the creation of a limitation statute. They are nothing more than a legislative declaration of the legal effect of the preceding creative words, which, without the explanation of the legislature, the courts would have assigned to the first above quotation. The purpose of our General Assembly, as it seems to us, in adding the last quoted words, was to make clear the legislative intention, namely: that the neglect of the state to bring suit to collect a tax after five years from the time it was due and legally demandable raises a conclusive presumption of payment, and, as a necessary corollary, the lien is removed, not only as against a purchaser, as under the Pennsylvania and Illinois statutes, but also the state's lien was lost because it was merely an incident of the tax which the law conclusively presumed had been paid. Section 6392, C. L. 1921 of our general limitation statute reads: The following actions shall be commenced within six years, next after the cause of action shall accrue, and not afterwards." We have uniformly held that these words operate as a bar to the institution of an action after the time limited, unless, of course, the running of the statute is stayed on some equitable grounds. If our rulings have been right, and we think they are, for the same reason the words of the first quotation operate as a bar. It was only because the natural and ordinary effect of these words, which we have said they have, was qualified by the closing words of the Pennsylvania and Illinois statutes, that the Pennsylvania and Illinois courts said their statute was not a general, but a restricted, limiting act. The restrictive words not being in our limitation section, we think it is just as broad and as general in its effect as is our general limitation statute referred to, and we must presume that our General Assembly, in omitting the words which these courts held to be restrictive, intended our section to be a general limitation statute. So far as we know, the meaning of section 41 is important only to these parties. It was amended in 1909 (S. L. 1909, p. 466), by the omission of the entire limitation provision. The repealing

or amending statute, however, expressly provided that it should affect only the estate of decedents dying after its passage, while estates of those dying theretofore shall be taxed under the former laws. The attorney general does not seriously claim that the repeal of the limitation, without a saving clause, revives the right to sue without regard to time, and could not well do so in view of our own decisions like *Willoughby v. George,* 5 Colo. 80, and subsequent cases following it, and by *Chambers v. Gallagher,* 177 Cal. 704, 171 Pac. 931, which hold that when the bar of a limitation statute once attaches, the legislature, by an amending or repealing act, may not revive the action.

That the presumption of payment is a conclusive presumption, we have no doubt. There is a distinction between presumption of payment from the running of a statute of limitations, and a presumption of payment arising from the lapse of time. In the latter case the presumption of payment is a mere rule of evidence, and may be rebutted, but in the former the statute of limitations makes the lapse of time a positive and absolute legal bar. 25 Cyc. 984; 21 R. C. L. § 146, p. 130; *Chesapeake & Del. Canal Co. v. U. S.,* 223 Fed. 926, 139 C. C. A. 406, L. R. A. 1916B, 734; *In re Mellon's Appeal,* 114 Pa. 564, 573, 8 Atl. 183.

2. The attorney general first answers that the proceeding employed below is not a suit in the sense of that word in section 41, and that it is not the only or exclusive remedy for collecting the tax prescribed by the Act of 1921 under which the proceeding was conducted. The New York decisions under a similar statute hold that such a proceeding is a suit, and that the court acts in a judicial, not in an administrative, capacity in assessing the tax. *Matter of Hull,* 109 App. Div. (N. Y.) 248-249; *Nunnemacher v. State,* 129 Wis. 190, 223, 108 N. W. 627, 9 L. R. A. (N. S.) 121, 9 Ann. Cas. 711; *Union Trust Co. v. Probate Judge,* 125 Mich. 487, 494, 84 N. W. 1101. That the proceeding adopted by the tax commissioner to collect this tax is not the only one provided by the 1921 Act may, for our present purpose, be conceded. Unquestionably, how-

ever, it is one of the remedies given. Section 13, p. 428, S. L. 1921. The attorney general might have instituted a civil action under section 19 of the act, but he did not do so and it is immaterial here, if it be true, that both remedies are available. When the attorney general, for the tax commissioner, selected the one he did, this was his right and he is bound by his election. The effect of the judgment of the district court approving the appraisal by the county court, and the amount of the tax as fixed by that tribunal in the proceeding chòsen, is just as much a judgment of a court as would be a similar judgment of the county court rendered in a civil action brought by the attorney general. They are both enforced or executed in the same way and as legacies are enforced in the county court in transacting probate business.

3. It would seem to be the principal contention of the attorney general that if the proceeding is a suit, it was brought within the prescribed period. He says this is true because the property was never appraised or the tax ascertained within the limiting period, and that a suit or proceeding to collect may not be maintained until the amount thereof is judicially determined. We think he is in error. That the tax "was due and payable" at the death of decedent is expressly declared by section 23 of the 1902 act. It is imposed by the statute itself and made a lien upon the property chargeable therewith. The court does not, in any circumstances, impose or levy the tax. That has already been done by the statute. The court's jurisdiction is restricted to an ascertainment of the amount which, when assessed or determined, relates back to the time of the death of decedent. The liability of the recipient of the property and the lien thereon attach or accrue at the moment of the decedent's death and the statute expressly makes the tax then "due and payable." But the attorney general, conceding this to be true, says "due and payable" differs in meaning from "due and legally demandable." If a tax is "due and payable" at decedent's

death, as the statute provides, it is difficult to perceive why it is not then "due and legally demandable."

That payment of the tax may not be exacted at decedent's death and not until the amount is subsequently ascertained, does not make inapplicable the provision that it is then due and payable and due and legally demandable; and the fact that the amount is not then known is not an insuperable objection to the institution of a suit to collect it at any moment the state elects to do so after decedent's death and within the period of limitation. The element of the amount of the tax is matter of evidence. And in a suit or proceeding to collect the tax, which this proceeding is, the amount thereof is its ultimate object. In *Aetna Casualty & Surety Co. v. North Sterling Irr. Dist.*, 75 Colo. 185, 225 Pac. 261, the plaintiff, an irrigation district, claimed damages because of a default of its contractor to complete the work of building its ditch. Under a contract between the parties, suit on the contractor's bond for such damages must be brought within a year from the time final payment under the contract became due. It was impossible to ascertain the exact amount of the damages until after the plaintiff had completed the ditch itself and this work could not be completed until after the expiration of the one year period. Nevertheless, suit was properly brought for this breach of the contract within the year, declaring generally for damages the amount of which, for the reasons stated, could not be given. It was held there that this did not prevent the institution of the suit before an ascertainment was had of the amount of damages, which amount, if ascertained before the trial, would be legitimate evidence upon that issue.

So far as concerns the question of limitation, there is no difference between "due and payable" and "due and legally demandable." The state might have instituted this proceeding or brought a civil action at the time of the decedent's death to collect the tax and, therefore, the statute begins to run from the time the right to sue attaches. The state officer or officers were charged with the duty and they

had the power to compel an ascertainment of the tax at any time after the decedent's death. Section 23 of the statute provides for interest on the tax from the decedent's death until it is paid; but if paid within six months, interest is waived and a discount of five per cent is allowed; and if not paid within one year from decedent's death the person liable therefor must give a bond for payment of the tax and interest. Assuming, but not deciding, that the effect of this provision is to add one year to the five year limitation provision, the present proceeding or suit to collect is barred because it was not instituted until after the lapse of five years after the decedent's death. This proceeding to collect was begun not earlier than June 16 or June 26, 1922, more than twenty years after decedent's death. If the caveat be taken as the beginning of the suit, which as we have seen is not permissible, it was filed more than fifteen years after the decedent died.

Why the taxing officials did not cause the tax to be fixed or allowed, why they permitted final settlement to be made, and why they deferred action of any kind, until long after the right to sue to collect a tax was barred, this record is silent and it would be mere speculation for us to inquire further about it. They had the right to begin a proceeding or suit to have the tax fixed and to collect the same within the limitation period. They may not neglect their duty in the premises and thus toll the statute. In *People, ex rel. v. Roberts,* 157 N. Y. 70, 51 N. E. 437, the court said there was no reason why the statute of repose should not be given its full benefit and effect when the state is a claimant the same as in the case of private individuals, and that it was not within the power of the comptroller to fix a tax, to the collection of which a legal defense exists, under the statute of limitations.

No authority against the conclusion which we have reached has been produced by the attorney general, and not a single case has been cited which holds or intimates that inheritance taxes can not be sued for until they have been assessed or fixed, when the statute which imposes the

tax expressly declares that the tax is due and payable at the time of decedent's death. Although the executrix suggests, she does not urge it in argument or rely upon it for reversal, that unexplained laches of the taxing officials is a bar to this attempt to fix the tax or collect it under the doctrine of *Robinson v. Bierce,* 102 Tenn. 428, 52 S. W. 992, 47 L. R. A. 275, and we shall not enter upon that inquiry.

The judgment of the district court, being adverse to our views, the same is reversed with instructions to set aside the same and to enter and certify a judgment directing the county court to dismiss the proceeding.

MR. JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.