## No. 16,515.

### Kostelc, Administratrix *v.* Lake County Department of Public Welfare.

(223 P. [2d] 614)

Decided October 16, 1950.

Mr. EUGENE A. BOND, for plaintiff in error.

Mr. HAROLD A. GRANT, Mr. PETER J. LITTLE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error is the administratrix of the estate of one Ruth Mathews who died intestate in Lake county on May 19, 1949. Said deceased had been the recipient of an old age pension paid to her by the Lake County Department of Public Welfare, beginning in the month of June, 1948, and continuing until the time of her death. The total amount of old age pension thus paid to said deceased was $937.00.

Within two days prior to the death of said old age pensioner, a representative of the Department of Public Welfare called upon her to assist in arrangements for hospitalization. The pensioner produced $1080.00 in currency. One thousand seventy dollars of this sum was "pinned on her undergarment and the bills were all wadded together." In addition to the cash she had a pension check for the sum of $72.00 which had not been cashed. The total of these assets in the pensioner's possession just prior to her death was the sum of $1152.00.

Following the death of Ruth Mathews and the appointment of the administratrix of her estate, the Lake

County Department of Public Welfare filed a claim against said estate for repayment of the nine hundred thirty-seven dollars theretofore, as claimed, illegally received by deceased. Upon the trial in the county court the claim was allowed, and the administratrix appealed to the district court, where judgment was entered in favor of the claimant for the full amount of the claim filed by the county Department of Public Welfare. The administratrix brings the case here for review by writ of error.

Determination of this cause involves an interpretation of certain provisions of the old age pension laws of the State of Colorado, being chapter 119, '35 C.S.A., as amended by section 14 (chapter 201, page 893), Session Laws of Colorado 1937, which reads as follows: "Any person who makes a false representation of a material fact determining his eligibility for a pension under this Act, and who by reason of said false representation actually receives a pension under this act which would not have been granted except for said false representation shall be liable to the State or County Department for a return of the total amounts thus received by him as a pension; and no exemption shall be allowed any person against a judgment for the amount of moneys thus fraudulently obtained. Actions for the recovery of such sums shall be prosecuted by the county or State Department in any court of record having jurisdiction thereof." Section 15, chapter 201, Session Laws of 1937, page 893, contains the following: "If at any time during the continuance of a pension grant the recipient thereof becomes possessed of any property or income in excess of the amount stated in the application provided for in Section 7 of this Act, it shall be the duty of the recipient immediately to notify the county department of the receipt or possession of such property or income and the county department may, after investigation, either cancel the pension or alter the amount thereof in accordance with the circumstances."

Section 1, chapter 148, page 458, Session Laws of 1943, which places limitation upon the right of recipients of old age pension benefits to own property, contains the following pertinent provision: " * * * and no. person shall be denied a pension by reason of the fact that he is the owner of real estate other than real estate occupied by him or her as a residence, personal property, or possess a cash surrender value of a life insurance policy in the total amount not in excess of seven hundred and fifty dollars ($750.00); provided, however, an applicant or recipient may be denied a pension in the event he is the owner of real estate, personal property, or possesses a cash surrender value of a life insurance policy in the total amount in excess of seven hundred and fifty ($750.00); and no recipient of a pension under this Act shall be required, in order to receive such pension to repay or promise to repay the State of Colorado any money paid to him or her as an old age pension."

The decedent signed an application for old age pension on May 17, 1948, in which she represented her only asset to be $450.00 in cash. The said application contained the following: "I agree to notify the County Department immediately if at any time I come into possession of property or income in addition to that stated above." Notwithstanding frequent visits by the welfare department workers, no notice was ever given the department that decedent possessed moneys in excess of the sum stated in the application until it was produced by her under the circumstances already related.

The uncontradicted evidence disclosed that on April 26, 1948, three weeks prior to her pension application, decedent entered into a contract to purchase real estate and paid $400.00 on the total purchase price of $800.00. Before making application for the pension, and on May 6, 1948, she paid $153.95 on the purchase contract. After making the application for pension she made a payment once each month for four months, which completed her

contract. The total amount paid on the real estate subsequent to the pension application was $247.14. It is clear that the real estate purchased was the premises occupied as a home by decedent. The evidence established without contradiction that for the eight-month period, from October, 1948, to May, 1949, following the receipt of a pension by decedent, she spent $156.65 in purchases made from a business establishment dealing in "groceries, Meats, Dry goods, Drugs." The record does not show what expenditures were made by decedent for her support during June, July, August and September, 1948. Neither is there any record of expenditures for fuel, water, utilities or any other incidentals for the year during which the pension was paid.

At the time decedent made disclosure of cash assets in the amount of $1152.00, which was one year following the application for pension, she possessed $402.00 in excess of the maximum sum which pensioners are permitted to own without affecting their eligibility to be admitted to, or to remain on, the pension roll. The trial court did not make specific findings relating to the facts, but it was recited in the judgment that, the court "finds the issues joined herein in favor of the Appellee and against the Appellant, and finds that the claim of the Lake County Department of Public Welfare, in the sum of Nine Hundred Thirty-seven ($937.00) Dollars, is a just and proper claim against said estate and should be allowed."

It is argued for reversal of the judgment that the burden of proof was upon the county department to establish false representations on the part of decedent at the time she made application for pension, and that such false representations must be of material fact determining eligibility resulting in the receipt of a pension by her, which would not have been granted except for the particular false representation. It is contended that no evidence was produced of any such false representation. It is further contended, as grounds for re-

versal, that the statute above quoted, relating to a change in financial status of a pensioner, and imposing upon those receiving a pension the duty to disclose a change in their financial situation, does not authorize a recovery of pension payments received by the person who fails to make such disclosure.

A further ground upon which reliance is placed for reversal is that recovery by the county department in any event should be limited to the excess over $750.00 owned by the pensioner at the exact time of receipt of a pension payment, and that there is no evidence showing any such excess at any time when decedent received such payment.

Counsel for the county department argue that but one conclusion can be drawn from the admitted facts, which is that the decedent "was in possession of an amount considerably more than $750.00 when she signed the application for pension." It is apparent from the whole record that the case was tried upon the theory that the decedent possessed more than $750.00 upon the date of her application, and that her failure to disclose such excess money resulted in the granting of a pension which would not otherwise have been awarded, resulting in the right of the department to recover all sums paid to decedent.

Questions to be Determined.

First: *Is there any competent evidence sufficient to establish that decedent on May 17, 1948, made a false representation of a material fact determining her eligibility to receive a pension?*

█ This question is answered in the negative. The burden of proof rested upon the Lake County Department of Public Welfare to establish the validity of its claim. Proof that decedent had in her possession $1152.00 on May 17, 1949, does not prove that she had more than $750.00 one year prior to that date. The only representation which could be material, and determinative concerning the eligibility of decedent to pension

benefits, would be the representation that she had no more than $750.00. If she had less than that sum she was eligible. If she had more than that sum she was not eligible. We must commence our computations with the amount which is authorized by the statute to be possessed, and the legal effect of the representation of decedent is that she possessed no asset in excess thereof. It became the responsibility of the county department therefore to prove that decedent possessed more than $750.00 on May 17, 1948.

The only evidence offered to prove the falsity of this representation was that one year later decedent had $1152.00; that on June 22, 1948, following receipt of her first pension check amounting to $68.00, she paid $40.00 on the purchase of property. She could not have added anything to her cash on hand from the $28.00 left after payment of $40.00 on the property since she had to pay for a month's sustenance. We cannot assume that less than $28.00 would pay her living expenses for one month. The same situation continued for four months, namely, the pension received did not amount to more than the amount paid on the purchase price of the property plus what must necessarily have been spent on sustenance apart from housing. It would seem clear that the accumulation by decedent of money in excess of the sum of $750.00 was not established at any time during the four-months period in which she completed the purchase of her property. It follows that the county department failed to prove a false representation material to the question of eligibility by decedent in her application for pension, and the trial court erred in holding that all pension payments received by said decedent should be returned to the county department.

Second: *Can the county department of public welfare recover the amount paid an old age pensioner after such pensioner has come into possession of money, or property, of a value in excess of that which determines his eligibility; where the statute requires disclosure by*

*the pensioner of assets acquired by him following admission to the pension rolls; and where the pensioner fails to make such disclosure?*

This question is answered in the affirmative. To hold otherwise, would be to sanction a palpaple fraud, and reward the wrongdoer, or his heirs, by permitting them to retain moneys fraudulently acquired by violation of the statute imposing the positive duty to make disclosure of facts which the wrongdoer concealed. We are not impressed with the contention that the statute which requires full disclosure of a change in financial situation of a pensioner, makes no specific provision for recovery of pension checks fraudulently received through concealment of the truth relating to continued eligibility.

We have no hesitancy in declaring that even in the complete absence of any provision in the entire Act specifically authorizing recovery of moneys illegally and fraudulently obtained by one not entitled to benefit, the agency paying the benefit could recover all the funds thus expended.

 Under the statutory provisions hereinabove set forth, the continuing eligibility of a pension recipient depends upon an absence of assets in excess of the maximum values fixed by the statute. A pensioner who acquires—by whatever means—a sum in excess of the amount which determines his need for a pension, becomes immediately ineligible for benefits until the excess is expended in self-support. The acceptance on the part of a pension recipient of a pension check, is in effect an affirmative representation that no assets have been acquired by him which in any manner disqualifies him to receive the benefit provided by the pension law. Neither the pensioner in his lifetime, nor his heirs thereafter, can retain moneys which are shown to have been paid out to one not eligible to receive it. A recovery can be had of all moneys paid out for the entire time the recipient was in fact disqualified to receive the pension, and the county department is not limited in the re-

covery to the amount possessed by the pensioner in excess of the sum which determines eligibility.

With these principles in mind, the question for determination in the instant case is: When did the decedent come into possession of money in excess of $750.00? We are satisfied from the evidence that at sometime between October 1, 1948, and May 17, 1949, the decedent became ineligible for pension payments. The trial court should determine from the evidence already before it, and from any additional evidence that the parties may desire to present in further proceedings, when decedent became ineligible for further pension benefits, and all moneys received thereafter should be awarded by judgment in favor of the county department.

The cause is remanded with directions to further proceed in harmony with the views expressed herein.

MR. JUSTICE STONE and MR. JUSTICE ALTER not participating.