No. 20973.

ARCHIE HINSHAW, AS EXECUTOR OF THE ESTATE OF
ALLIE PERRY ARTHUR, DECEASED *v.* THE DEPARTMENT
OF WELFARE, CITY AND COUNTY OF DENVER, ET AL.
(403 P.2d 206)

Decided June 21, 1965.

ROBERT E. McLEAN, MARJORIE WORLAND McLEAN, for plaintiff in error.

MAX P. ZALL, City Attorney, FRANK A. ELZI, Assistant, ROBERT G. HOGHAUG, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as the executor, is here on writ of error to review a judgment of the probate court of the City and County of Denver allowing two claims filed by the Department of Welfare in the estate of Allie Perry Arthur, deceased.

The first claim was based upon the fact that the deceased, who was an old age pensioner, failed to disclose that she held title to the property in which she lived, and that by reason thereof no net rental value was deducted from the maximum old age pension grant to which she was entitled, during the period from November 1947 through January 1955.

The second claim was filed to recover funds advanced to said deceased as benefits to a blind person under the provisions of C.R.S. '53, 16-3-1 et seq.

Pursuant to Rule 112 (e), R.C.P. Colo., the issues are submitted to this court on an agreed statement of the parties, the pertinent parts of which are as follows:

"IT IS STIPULATED AND AGREED that the following facts are true:

"1. The controversy before this Court arises from the allowance of two claims filed by the Department of Welfare, City and County of Denver, Colorado, and the City and County of Denver, Colorado, a Municipal Corporation against the Estate of Allie Perry Arthur, deceased. One was for Old Age Pension payments in the amount of $268.83, and the other for Aid to the Blind in the amount of $184.00.

"2. The claim for Aid to the Blind was for treatment and surgical costs paid by the Department of Welfare of the City and County of Denver, Colorado, in the amount of $184.00, and there is no dispute that the said amount was paid in behalf of decedent.

"3. There is no question of fraud involved.

\* \* \*

"5. On or about October 1, 1944, the decedent, Allie Perry Arthur, was living with a nephew, William Perry, in a house owned by William Perry, at 248 South Kalamath Street, Denver, Colorado.

"6. On or about November 15, 1947, William Perry conveyed the said property to himself and Mrs. Arthur, in joint tenancy. No proof was offered that decedent knew of the joint ownership of said property until November of 1954.

"7. On or about November, 1954, the nephew, William Perry, was killed and sole ownership to the property thus owned by him in joint tenancy then vested in Mrs. Allie Perry Arthur, and she immediately notified the Department of that fact.

"8. Effective February, 1955, the Denver Department of Welfare determined that a net rental value of one-half of the property owned by Allie Perry Arthur as a joint tenant from November, 1947 to and including January, 1955 of $3.09 per month, or a total of $268.83, should have been deducted from Mrs. Arthur's pension during said period. A claim for the said amount of $268.83 was not made by the Department during the lifetime of Mrs. Arthur, but was first asserted against her estate.

\* \* \*

"10. The sole asset of the Estate of Allie Perry Arthur is the property at 248 South Kalamath Street, Denver, Colorado, which she devised by Will, duly admitted to probate, to another nephew.

"11. The Denver Department of Welfare, in apt time, filed a claim against the Estate of Allie Perry Arthur,

seeking to recover the sum of $268.83 "for funds advanced to said decedent as Old Age Pension when she failed to declare title to home property, therefore, no Net Rental Value was deducted from maximum Old Age Pension grant from November, 1947 through January, 1955," all of which appears in the claim which is a part of this record.

"12. The Executor of the Estate resisted the Old Age Pension claim on the basis that Mrs. Arthur had not failed to declare title to home property because she had no knowledge that she had title to home property and further that the Department was barred from asserting the claim because of laches and the Statute of Limitations.

"13. The Department of Welfare, City and County of Denver, Colorado, advanced the theory that the Statute of Limitations and the Statute of Laches did not apply because of the sovereign immunity of the governmental agency.

"14. At the hearing of the claims in the County Court, the testimony of Charline J. Birkins, Director of the Denver Department of Welfare, was offered to prove the claims, which testimony was received over the objection of counsel for the Executor of the Last Will and Testament of said decedent, and specifically as it related to the claim for Aid to the Blind.* * *"

The points relied upon by the executor as grounds for reversal are as follows:

"1. The claimant was precluded from proving its claims by the testimony of Charline J. Birkins.

"2. The claimant was barred from recovery by virtue of the Statute of Limitations.

"3. The claimant was barred from recovery by reason of laches."

Point one above mentioned merits no discussion since all pertinent facts were before the trial court on stipulation of the parties. Moreover, Charline Birkins, the head of the County Department of Public Welfare,

had no personal interest in the claim and was not disqualified as a witness.

With reference to the assertion that the claim was barred by the statute of limitations, we direct attention to *Dietemann v. People,* 76 Colo. 378, 232 Pac. 676, in which it was held that statutes of limitation ordinarily do not apply to the state, but the legislature may make them applicable. In that case the action was brought to collect an inheritance tax. The statute which created the tax expressly provided a limitation on the right to recover upon the personal liability of the parties.

In *People v. Miller,* 90 Colo. 269, 8 P.2d 269, we find the following pertinent language:

"It was a maxim of the common law that, 'Lapse of time does not bar the right of the Crown.' Broom's Legal Maxims (7th Ed.), p. 65. The king, therefore, was not bound by the statute of limitations, unless there was an express provision including actions brought by the Crown. Angell on Limitations (6th Ed.), §34; *United States v. Hoar,* 2 Mason Cir. Court, 311, 312, per Mr. Justice Story. In 17 R.C.L., p. 689, it is said: 'In England the rule has long been recognized that * * * a statute of limitations does not bind a sovereign without express words of inclusion. * * * This principle of construction of statutes, at least as far as it affects statutes of limitation, has been followed in the United States. * * * Hence the rule is that neither the general government nor the state is bound by such a statute unless it is named or it is expressly so provided.' And in 1 Wood on Limitations (4th Ed.), §52, the author, speaking of the statute of limitations, says: 'Except the statute otherwise expressly provides, it cannot be set up as a bar to any right or claim of the State; thus, it does not apply * * * to any class of claims in favor of the State, unless the statute expressly so provides.' The law is thus stated in 19 Am. & Eng. Ency. Law (2d Ed.), p. 188: 'The pre-

rogative of royalty in regard to the limitation of actions extends to republican governments, and the maxim *nullum tempus occurrit regi* applies in the United States, both as to the federal government and as to the several states, except where express statutory provisions to the contrary exist.' Citing many cases decided by the U.S. Supreme Court and the Supreme Courts of the states. In *Metropolitan Railroad Co. v. District of Columbia,* 132 U.S. 1, 11, 10 Sup. Ct. 19, the court quoted with approval the following statement in 2 Dillon, Municipal Corporations (3d Ed.), §668: 'The doctrine is well understood, that to the sovereign power the maxim, *"nullum tempus occurrit regi,"* applies, and that the United States and the several States are not, without express words, bound by statutes of limitations.'

"In *Dietemann v. People,* 76 Colo. 378, 232 Pac. 676, the people sought to recover an inheritance tax under the Act of 1902 (S.L. 1902, c. 3). Section 41 of that act (since repealed — S.L. 1909, c. 193) provided that all inheritance taxes should be sued for within five years after they were due and legally demandable. As such suits can be prosecuted only by the people, or in their behalf, we held that that section of the statute barred recovery by the people in a proceeding brought after the time limit. However, we recognized the law to be as stated above when we said: 'Statutes of Limitation ordinarily do not apply to the state, but the legislature may make them applicable to the state if it sees fit to do so, and it has done that here because the limitation of five years runs as against the state, and the tax belongs to the state only.'

"In the act under which the present suit was brought, there is no provision limiting the time within which action may be commenced, and the general statute of limitations does not apply to actions brought by the people. The demurrer to the plea of the statute of limitations should have been sustained."

In *Massachusetts Company v. Board of County Commissioners,* 100 Colo. 398, 68 P.2d 555, this court said:

"Finally, the Bonding Company urges that no part of the losses prior to 1932 may be recovered, because barred by the three-year statute of limitations, section 6, c. 102, vol. 3, p. 1480, '35 C.S.A. This contention likewise has no merit, because the statute may not be invoked against the state, and even though the state as such was not a party to this action, it is unquestionably true that a considerable part of the money stolen belonged to the state. 37 C.J. 711, *Dietemann v. People,* 76 Colo. 378, 232 Pac. 676."

In *People ex rel. Hinkley v. Maytag,* 121 Colo. 446, 218 P.2d 512, this court, in speaking of a personal liability for a gift tax stated:

"From the italicized portions of the above section, and from similar statements throughout the act, it is clearly apparent that the gift tax herein considered was imposed at the time the gift was made and became a lien on all the donor's property by operation of law; that there remains but the ministerial duty of the Inheritance Tax Commissioner to determine and compute the amount of the tax in accordance with legislative standards contained in the act; that the obligations or liabilities of the donor thereupon become vested in the state; and that they may not be relinquished or released except upon payment of said tax. Colo. Const., Art. V., §38." Section 38, Article V, of the Constitution of the State of Colorado, cited in the Maytag case, reads as follows:

"No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the general assembly, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury."

The right of the County Department of Public Welfare to recover the amount paid an old age pen-

sioner after such pensioner has come into possession of money or property of a value in excess of that which determines his eligibility was settled in *Kostelc v. Welfare Department,* 122 Colo. 481, 223 P.2d 614.

In *State of Colorado v. Griffith's Estate,* 130 Colo. 312, 275 P.2d 945, this court stated:

"It was within the power of the legislature to make the statutes of limitation or of nonclaim, as here involved, applicable to the state if it saw fit to do so; however, the legislature has not so acted to that end. 'Stated in broad terms, it is a rule of universal recognition that the government is not included in a general statute of limitation unless it is expressly or by necessary implication included. This rule is said to be founded upon the legal fiction expressed in the maxim, *nullum tempus occurrit regi.* However, it is not necessary to predicate this salutary precept upon any fiction, since sound reason for the rule is found in the fact that as a matter of public policy it is necessary to preserve public rights, revenues and property from injury and loss by the negligence of public officers.' *State Land Board v. Lee,* 84 Ore. 431, 165 Pac. 372, and cases there cited."

*Kostelc v. Welfare Department, supra,* was approved as late as January 23, 1956, in *Denver Department of Public Welfare v. Wysowatcky, Adm'r.,* 133 Colo. 153, 292 P.2d 735, wherein this court upheld specifically the following language:

"* * * The acceptance on the part of a pension recipient of a pension check, is in effect an affirmative representation that no assets have been acquired by him which in any manner disqualifies him to receive the benefit provided by the pension law. * * *"

The executor relies on *Ace Flying Service, Inc., v. Colorado Department of Agriculture, et al.,* 136 Colo. 19, 314 P.2d 278, in which it was held that when a state enters into authorized contractual relations it thereby waives immunity from suit; and *Colorado Racing Commission v. Brush Racing Association, Inc.,* 136 Colo. 279,

316 P.2d 582, in which this court ruled that the doctrine of sovereign immunity did not apply in an action against the state to recover moneys paid under protest as "breakage" in pari-mutuel wagering on horse races. Counsel for the executor lifts out of context the following language from that opinion:

"* * * In Colorado 'sovereign immunity' may be a proper subject for discussion by students of mythology but finds no haven or refuge in this Court. * * *"

From *Stone v. Currigan,* 138 Colo. 442, 334 P.2d 740, our attention is directed to the following:

"* * * The doctrine of sovereignty in Colorado is in limbo, only the memory lingers on. Sequiturs that emanated from the doctrine such as 'immunity from suit,' 'immunity from paying interest,' 'immunity from the statute of limitations,' etc., have with the demise of the doctrine become non-sequiturs. * * *"

No statute of limitations was involved in any of the above cited cases. Anything said therein with reference to a statute of limitations was pure dictum. Sovereign immunity was an established legal concept before statutes of limitation were adopted. They are not germane to the doctrine of sovereign immunity but are of statutory origin. No subdivision of the state is seeking immunity in this case. On the contrary, it is the representatives of the decedent who are seeking an immunity from suit for the benefit of the beneficiary of her will.

With reference to the objections of the executor concerning refund of expenditures made by the Department of Welfare under the statute authorizing expenditures for benefits to the blind, it is sufficient to say, in addition to the foregoing, that under the express terms of the statute a refund is collectible against the estate of the recipient of benefits to the blind. C.R.S. '53, 16-3-20, provides:

"On the death of any recipient, the total amount of assistance paid under this article shall be allowed as a

claim of the third class against the estate of such person. No claim shall be enforced against any real estate of a recipient while it is occupied by the surviving spouse as a home."

By this provision of the statute it is clear that the legislature did not intend that any statute of limitations should bar recovery of money expended as benefits to the blind.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE FRANTZ dissent.