## Commonwealth v. Van Kirk's Estate

*Charles C. Crowell*, for Commonwealth.

*J. S. Van Kirk*, for defendant.

LAIRD, J., December 19, 1939.—This is a proceeding to determine whether the Commonwealth has the right to collect a claim for transfer inheritance tax on the estate of W. A. Van Kirk, deceased, who died intestate on September 5, 1918, possessed, inter alia, of a certain tract of land in Rostraver Township, Westmoreland County, Pa., containing 65 acres, more or less.

No letters of administration were raised on his estate; no inheritance tax was paid by the heirs; no notice given to the register of wills of the death of the said decedent, and no record made in the register's office of decedent's death.

Subsequent to the death of W. A. Van Kirk, his heirs, by deed dated April 4, 1921, and recorded on June 9, 1921, in the recorder's office in and for Westmoreland County, Pa., in Deed Book vol. 711, p. 277, conveyed to Minerva J. Moody 62 acres, more or less, of the ground or premises above mentioned.

After that conveyance there remained in the estate of W. A. Van Kirk, deceased, 96/100 of an acre of ground,

on which was erected a two-story brick house, together with certain other outbuildings.

On April 23, 1937, at no. 663, May term, 1935, the Commonwealth of Pennsylvania filed a certificate of non-payment of inheritance tax against the said estate in the prothonotary's office of this county in the amount of $130, on which interest was claimed from September 5, 1919, at 12 percent per annum.

A note appended to the certificate of the Deputy Secretary of Revenue states that it "is filed for the purpose of extending the lien against decedent's real estate for a further period of five years in the manner provided by law. (Section 39, Act of June 20, 1919, P. L. 521, as amended by the Acts of May 16, 1929, P. L. 1795, and July 14, 1936, P. L. 44)."

The case now comes before this court on the petition of Louis W. Van Kirk, a son and one of the heirs of W. A. Van Kirk, deceased, for a rule "To show cause why the inheritance tax lien aforesaid should not be stricken from the record as void under the acts of assembly in such cases made and provided", for the reason "that said lien for inheritance tax not having been filed within five years after the death of the said W. A. Van Kirk is void as against the property heretofore sold pursuant to the Act of July 11, 1917, P. L. 832, sec. 20, as later amended by the Act of June 20, 1919, P. L. 521, sec. 39, as later amended by the Act of May 16, 1929, P. L. 1795, sec. 2." The petition further alleges: "That the amount set forth in said tax lien which covers the inheritance tax placed upon the appraised value of the entire real estate of W. A. Van Kirk at the time of his death was filed as a lien of record at the above number and term on April 23, 1935, which is approximately 17 years after the death of the deceased and 16 years after the same was due and 14 years after most of the property had been sold and is in violation of the acts of assembly heretofore referred to and is therefore void as not being in the right amount."

With this the Commonwealth takes issue, asserting that the amount of the claim, namely, $130 with interest, is the correct amount of the inheritance tax due the Commonwealth on the entire estate of the above-named decedent, and that the same is and continues to be a lien on the remainder of the tract of land above mentioned which yet remains in the hands of the heirs of W. A. Van Kirk, deceased, and alleges that the tax lien and the filing thereof as aforesaid is not in violation of any act of assembly and is a valid and existing lien on the said real estate.

This raises but a single question, stated by defendant as follows: "Can the Commonwealth of Pennsylvania file a certificate creating an inheritance tax lien more than five years after the same is due? Can the Commonwealth file a lien against the property remaining in the amount of the entire tax due 16 years after the same is due and 14 years after the other property has been sold to a third person?"

Counsel contents himself with propounding the question, but does not attempt its solution or offer any aid or assistance to the court in endeavoring to arrive at the proper conclusion.

There is no effort on the part of the Commonwealth to file a lien against that part of the real estate conveyed to Minerva J. Moody, nor is there effort being made to collect the tax, or any part of it, from Minerva J. Moody or the land purchased by her.

It is contended, however, by the Commonwealth that there are sufficient assets yet in the estate of W. A. Van Kirk to pay the tax and that the estate should pay the entire tax as levied and assessed on the appraised value of the whole estate. The estate, however, not conceding that it is liable for any part of the tax owing to the lapse of time, maintains that in any event it should not pay taxes on more than the portion of the estate now held by the heirs.

We are compelled to disagree with this position. We do not believe the tax should be apportioned or prorated. It is not the property that is taxed, but the right to succeed to that property.

As was said by Mr. Justice Kephart in the case of Shugars et al. v. Chamberlain Amusements Enterprises, Inc., 284 Pa. 200, 205-206:

"When the Commonwealth adopted an enlarged policy of taxation in 1917, a new class of property or rights was subjected to governmental burdens. Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed. Section 1 of the Act of 1917, P. L. 832, states what was proposed to be done: 'All estates . . . within this Commonwealth . . . passing from any person who may die seized or possessed of such estate, either by will or under the intestate laws . . . are hereby made subject to a tax.' The tax was a sum to be made certain under varying conditions and subject to definite rules. . . . It is immaterial to the State whether there has been a disposition of the property at death by will or otherwise; what the Commonwealth does is to fix all species of property of decedents with a tax,—'all estates and property, real, personal and mixed.'

"Notwithstanding the different situations, *the tax springs into life on the death of property owners;* eo instanti, it becomes seated on their estates."

It is not denied that the land purchased by Minerva J. Moody was a part of the estate of W. A. Van Kirk, and on his death passed to his heirs, and in the absence of anything to the contrary we are safe in presuming that the heirs obtained full value therefor when they conveyed the same to Minerva J. Moody. Since it is the avowed

policy of the Commonwealth to tax property, both real and personal, passing from the ancestor to the heir, it should not be considered a hardship on the latter to compel him to pay a tax on his inheritance for the support of the State and the preservation of government which protects and preserves his right to thus inherit.

The language of Judge Ashman in Cullen's Estate, 142 Pa. 18, seems applicable here, quoting from pages 19 and 20, where he states as follows:

"As a matter of the first impression, and without aid from the light which preceding legislation might cast upon its meaning, it would seem that it was intended to quiet the title of purchasers of real estate, by declaring that as to them the tax should be presumed to have been paid and should lose its lien, if suit for its recovery were not begun within the statutory period. This does not imply—it certainly does not affirm—that the personal liability shall not continue. On the contrary, even the lien is discharged only where the land has been sold; if there is no purchaser to protect, both the lien and the debt remain."

The first attempt of the Commonwealth to levy and collect a direct inheritance tax was under the Act of July 11, 1917, P. L. 832. Section 20 of that act provides:

"The lien of the said tax shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith. All such taxes shall be sued for within five years after they are due; otherwise, they shall be presumed to have been paid, and cease to be a lien as against any purchasers of real estate."

This was the law on September 5, 1918, the date of the death of W. A. Van Kirk, deceased, and the act under which the taxes would be due and a lien attach.

While the Act of 1917, supra, was repealed by the Act of June 20, 1919, P. L. 521, the liability of the estate for the tax was continued. Section 47 of the latter act provides, inter alia: ". . . but nothing in this repealer shall affect or impair the lien of any taxes heretofore assessed,

or any tax due, owing, or payable, or any remedies for the collection of the same, or to surrender any remedies, powers, rights, or privileges acquired by the Commonwealth . . .".

While the Act of 1919 was amended by the Act of May 14, 1925, P. L. 717, the Act of May 16, 1929, P. L. 1795, and the Act of July 14, 1936, P. L. 44, the provisions of the law as above quoted were not changed.

The Commonwealth has undoubtedly waited a long time to collect its tax. The fact, however, that no letters of administration were raised on the estate, no inventory or appraisement filed, no description of property filed, no statement of debts or list of creditors filed, and the death of W. A. Van Kirk not called to the attention of the taxing authority, may have accounted for a considerable part of the delay.

However, while the Commonwealth may not have been diligent in the collection of its claim, neither have the heirs been active in bringing the matter to the attention of the taxing authorities or to a final conclusion.

The decedent died on September 5, 1918; the appraisement for transfer inheritance tax purposes was made on April 4, 1935, and the certificate was filed in the prothonotary's office by the Commonwealth on April 23, 1935. The petition to strike off the tax lien was not filed until two years later, namely, on April 30, 1937, and the matter not called for disposition by the court until September 11, 1939.

It is not the filing of the certificate in the prothonotary's office that creates the lien. The lien is created by the act of assembly, and the certificate is only the evidence of it and the fact that the tax remains unpaid.

The clause in section 20 of the Act of 1917 that "The lien of the said tax shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith", is positive, imperative, or mandatory and this was not changed by subsequent legislation. In

the face of these acts, this court would have no power or authority to strike down the Commonwealth's lien for taxes.

Under the authorities above quoted, we are of opinion that the transfer inheritance tax due the Commonwealth would be a lien on the property in the hands of the heirs undisposed of unless the presumption of payment would operate in favor of the heirs or unless the claim was barred by the statute of limitations, but the statute of limitations does not operate against the Commonwealth: Cullen's Estate, supra; Ash's Estate, 202 Pa. 422.

Had the Commonwealth waited for a period of 20 years or more a different question might have arisen, but the presumption of payment does not begin to run until after 20 years: Appeal of Mellon et al., 114 Pa. 564; Harper v. Consolidated Rubber Co., 284 Pa. 444.

The Act of 1917, supra, gives no right to file the certificate of lien, but the Act of 1929 does. Section 2 of the Act of 1929, amending section 39 of the Act of 1919, supra, provides, inter alia:

"At any time within said five-year period, if the inheritance taxes on the realty appraised are not paid, the Department of Revenue shall have power to file a certificate, under its seal, certifying to such non-payment, which when filed in the prothonotary's office of the county where such real estate is situated, shall become a lien against decedent's real estate for a further period of five years from the date of such filing."

Section 1404 of The Fiscal Code of April 9, 1929, P. L. 343, provides:

"The Department of Revenue may, at any time, transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for State taxes, unpaid bonus, interest, and penalties, which may now exist, or hereafter arise, by virtue of any law of this Commonwealth, upon which record it shall be lawful for writs of scire facias to issue

and be prosecuted to judgment and execution, in the same manner as such writs are ordinarily employed."

This seems to be sufficient authority for the filing of the certificate above referred to. There seems, therefore, to be no limit to the right of the Commonwealth to collect its tax levies by such process and at such time as may be specified by the legislature, and as we view it the Commonwealth may adopt the method of filing a certificate in the prothonotary's office and issue a writ of scire facias thereon, or may bring suit in assumpsit, as it chooses.

It was not until the Act of May 16, 1929, that any authority was provided for the filing of a certificate of nonpayment of taxes in the prothonotary's office, and this certificate may be filed at any time if the taxes are due and unpaid. There is not much difference between the Commonwealth's right to bring suit for the taxes and the Commonwealth's right to file a lien. The Commonwealth unquestionably has the right to sue and collect its taxes, the presumption of payment not having run.

The question of whether or not the Commonwealth has adopted the right manner and method of procedure may be raised and determined if and when a scire facias is issued on the certificate as filed at the above number and term and payment of the taxes as assessed endeavored to be enforced: Commonwealth, Department of Revenue, v. Stewart, 52 York 26.

We are of opinion, therefore, that the taxes as finally determined, levied, and assessed by the representatives of the Commonwealth on the entire estate of which the said W. A. Van Kirk died seized are due, owing, and payable by his estate, and that the petition should be dismissed and the rule discharged.

And now, to wit, December 19, 1939, after argument and after due and careful consideration, it is ordered, adjudged, and decreed that the petition in this case be and the same hereby is dismissed, and that the rule heretofore granted be and the same hereby is discharged.