**GOLD RUSH INVESTMENTS, a Colorado general partnership, and Dennis R. Muck, Plaintiffs–Appellees and Cross–Appellants,**

v.

**Bruce FERRELL, Defendant and Third–Party Plaintiff.**

**Ann FERRELL, Defendant,**

v.

**MUCK, LTD., a Colorado corporation, and Graystone Castle, Ltd., a Colorado corporation, Third–Party Defendants and Appellees,**

**and Concerning**

**DeMuth & Kemp, a Colorado general partnership, Appellant and Cross–Appellee.**

No. 87CA0204.

Colorado Court of Appeals, Div. I.

March 23, 1989.

Rehearing Denied April 20, 1989.

Certiorari Denied Aug. 21, 1989.

Wiggins & Smith, P.C., J. Terry Wiggins, Denver, for plaintiffs-appellees and cross-appellants.

Sonheim, Helm & Less, Robert H. Sonheim, Arvada, for third-party defendants and appellees.

DeMuth & Kemp, Lael S. DeMuth, Denver, for appellant and cross-appellee.

CRISWELL, Judge.

The law partnership of Demuth & Kemp (counsel) represented the defendants and third-party plaintiff in the underlying case, and it appeals the trial court judgment which required it to pay attorney fees of $10,000 to plaintiffs and $5,000 to third-party defendants. Plaintiffs cross-appeal. We reverse.

From the abbreviated record presented on appeal, it appears that the litigation in which the judgment against counsel was entered dealt with the respective rights and obligations of plaintiffs and defendants as members of a partnership that allegedly owned certain oil and gas interests. At about the time that the controversy between the parties arose, one of counsel's partners wrote several letters to an attorney representing plaintiffs, setting forth defendants' positions upon various factual and legal issues. After the litigation commenced, defendants designated these letters as exhibits, although it is not clear whether they were to be offered as proof of the facts asserted in this correspondence or merely as proof of plaintiffs' knowledge of the position defendants were asserting on various issues.

In any event, plaintiffs claimed that the introduction of these letters would authorize them to call their author for testimony. Based upon this assertion, and for other reasons, plaintiffs filed a motion to disqual-

ify counsel from continued representation of the defendants. That motion was denied, and the matter proceeded to trial before a different judge.

On the fourth day of trial, counsel began to cross-examine plaintiff Muck about his knowledge of one of the letters. An objection was registered by plaintiffs' lawyer, and the court conducted a conference outside the presence of the jury. During this conference it was disclosed that defendants had assigned to counsel their alleged interest in certain oil and gas properties, which plaintiffs claimed were owned by the partnership. Counsel represented to the court that the assignment was merely to secure payment of fees to counsel, and counsel offered to reassign the interest to defendants or to cancel the assignment. In addition, counsel also advised the court that, if the introduction of the correspondence would result in a mistrial, defendants would not offer these exhibits.

Nevertheless, the trial court declared a mistrial and awarded attorney fees against counsel. Its written findings and conclusions setting forth its reasons for the mistrial relied exclusively upon Code of Professional Responsibility DR5–103; it made no reference to the possibility of defendants' lawyer being called as a witness. Neither did it make any reference to the source of its perceived authority to award attorney fees.

Code of Professional Responsibility Canon 5 directs that "a lawyer should exercise independent professional judgment on behalf of his client." To implement this canon, Code of Professional Responsibility DR5–103 provides, in pertinent part, that:

"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, *except that he may:*
(1) *Acquire a lien granted by law to secure his fee or expenses.*" (emphasis supplied)

■ As a part of its motion for reconsideration filed with the trial court, counsel submitted an affidavit from defendant Bruce Ferrell and a copy of the pertinent fee agreement. This affidavit asserts that, at the time of the fee agreement, fees could not be paid on a timely basis and arrangements were made to defer their payment. It was further asserted that the assignment to counsel of the oil and gas interest was intended to create only a security interest in the property, even though the language used was that of an absolute conveyance.

The written fee agreement submitted in conjunction with counsel's motion refers to defendants' difficulty with payment of fees, and it contains a request for an arrangement for deferring their payment. Then, the agreement specifies that:

"[S]ecurity for payment ... shall be given by a conveyance ... of all of the clients' right, title and interest to and in those certain leases ... entered into between Farm–Ranch Exploration, Ltd. of Englewood, Colorado and Gold Rush Investments."

No controverting affidavits or evidence were submitted by plaintiffs, and no claim has been made that the allegations of the affidavit were false or that the written fee agreement was entered into as a subterfuge. Thus, the legal effect of the documents submitted may be determined as a matter of law, and this court is not bound by the trial court's characterization of them. *Burks v. Verschuur,* 35 Colo.App. 121, 532 P.2d 757 (1974).

■ It generally rests with the Colorado Supreme Court, and not with this court or the district court, to regulate the practice of law and to impose discipline upon attorneys for ethical improprieties. *See* C.R. C.P. 201 and 241. Nevertheless, the inherent authority of the trial court to assure that litigants appearing before it obtain a fair trial allows it to disqualify counsel whose conduct may imperil that purpose even though, in considering that issue, it may incidentally consider whether counsel's conduct also constitutes an ethical violation. *See People v. Garcia,* 698 P.2d 801 (Colo.1985) (trial court could disqualify counsel who was to be called as a witness).

In this case, however, without passing upon the question whether counsel's arrangement with its clients constituted a

technical violation of DR5–103, we conclude that that arrangement did not endanger a fair trial. Thus, the trial court abused its discretion in granting a mistrial, disqualifying counsel from further representation, and assessing attorney fees.

The record shows that both parties to the fee agreement asserted that the assignment of the clients' alleged interest in the properties, while taking the form of an absolute conveyance, was intended by both merely to create a security interest in the property. This undisputed evidence of their mutual intent is supported by the terms of their written fee agreement which provided that the conveyance was to be "security for payment" of counsel's fees.

The assignment, which was designed to implement the fee agreement's terms, must be read in conjunction with the agreement. *See Fuller & Co. v. Mountain States Investment Builders*, 37 Colo.App. 201, 546 P.2d 977 (1975). When these two documents are considered together, no genuine issue as to the purpose of the assignment is presented. That assignment was for security purposes only.

This security interest may not strictly have been one "granted by law" within the meaning of DR5–103. However, § 12–5–119, C.R.S. (1985 Repl.Vol. 5) grants to an attorney a lien upon any "property" that the attorney may have assisted in obtaining through litigation, which lien is to serve as security for payment of any fees due or to become due to that attorney. Thus, if counsel had been successful in the underlying litigation, it would presumably have acquired a lien upon the very property that was described in the assignment. If it were unsuccessful, no statutory lien would have been created, and likewise, the written assignment would have been ineffective. The interest created by the assignment, therefore, was not one that would have prevented the exercise of counsel's independent professional judgment any more than a typical contingent fee agreement would inhibit the exercise of such judgment. *See* Code of Professional Responsibility DR5–103(A)(2).

Therefore, we hold that the court abused its discretion in declaring a mistrial.

Hence, even if it is assumed that a trial court may, under appropriate circumstances, award attorney fees against a party or counsel responsible for a mistrial (an issue not addressed by us), since the court improperly ordered a mistrial, it necessarily follows that its award of fees must be set aside.

In light of this conclusion, we need not reach counsel's other allegations of error. In addition, we need not address plaintiffs' contention that the court erred in granting them only a portion of their reasonable attorney fees and costs.

The judgment awarding attorney fees against counsel is reversed.

PIERCE and REED, JJ., concur.