**Ronald GROGAN and the State of Colorado, Plaintiffs–Appellants and Cross–Appellees,**

**v.**

**Lorelei A. TAYLOR, d/b/a Rocky Mountain Plateau, Defendant–Appellee and Cross–Appellant.**

No. 92CA1298.

Colorado Court of Appeals, Div. I.

Dec. 16, 1993.

As Modified on Denial of Rehearing Feb. 10, 1994.

Certiorari Denied Aug. 8, 1994.

Cross–Petition for Certiorari Granted Aug. 8, 1994.

LeHouillier & Associates, Patric J. Le-Houillier, Joseph R. Winston, Ronald A. Peterson, Colorado Springs, for plaintiffs-appellants and cross-appellees.

Quigley & Bruce, James M. Bruce, Bruce A. Logan, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge ROTHENBERG.

Plaintiffs, Ronald Grogan and the State of Colorado, appeal the judgment entered in favor of defendant, Lorelei A. Taylor, d/b/a Rocky Mountain Plateau, dismissing plaintiffs' claims as barred by the statute of limitations. Defendant cross-appeals the trial court's orders denying her motions for summary judgment and for costs. We reverse and remand for a new trial.

This case involves injuries arising out of a propane gas explosion in a motor home.

On November 6, 1986, Grogan had the gasoline and propane tanks on his motor home filled at a gas station owned by defendant. Later that night, Grogan, who had been sleeping in the motor home, awoke and lit a cigarette. The motor home exploded into flames, and Grogan was seriously injured. Plaintiff State of Colorado paid for the medical expenses Grogan incurred as a result of his injuries.

In late January 1987, Grogan retained attorney Ronald Peterson to investigate any potential claims he might have. Peterson asked Patric LeHouillier to be co-counsel.

Peterson contacted Grogan's insurer, and, in March 1988, Peterson received the investigative reports made by the insurer's fire and explosion expert (Boh). According to those reports, the explosion was caused by the faulty design of the gasoline venting system and was aggravated by the presence of propane.

That same month, Peterson also obtained the investigative report made by the fire chief who had responded to the explosion. According to the fire chief's report, the explosion had been caused by propane.

In March 1988, Grogan's attorneys contacted another explosion expert (Harrison) to determine whether propane was a cause of the fire. In July, that expert told counsel he disagreed with the first expert. He believed propane played a major role in the explosion, but did not know what caused it.

Relying on the first expert's conclusion that the explosion was caused by faulty design of the gasoline venting system, Grogan filed an action on October 28, 1988, in federal district court against the manufacturers of the motor home and the motor home chassis. Those defendants are not involved in this action.

In March 1989, Grogan's attorneys hired another fire and explosions expert (Romig) to examine and determine the cause of the fire. In October, that expert concluded that it was a propane explosion, but he did not know the cause.

In January 1990, Grogan met with Boh and another expert (Romig) to look at a motor home similar to the one that exploded. After looking at the motor home, Grogan told the two experts that on the night of the accident, he had purchased ten gallons of gasoline and ten gallons of propane. Based on Grogan's statement, the experts immediately concluded the explosion was caused by the overfilling of the propane tank, rather than a gasoline related cause.

As a result of the January 1990 information, Grogan dismissed his claim against the chassis manufacturer, and, on August 3, 1990, he amended his federal complaint to

add a claim against defendant based upon an alleged negligent overfilling of the propane tank.

In February 1991, the federal action was dismissed because of lack of diversity of citizenship.

On March 6, 1991, Grogan filed this action in state court. In June 1991, the State of Colorado was added as a plaintiff; it merely seeks the medical expenses paid on Grogan's behalf.

In its answer, the defendant asserted the affirmative defense of statute of limitations.

During the discovery phase of the action, defendant sought to depose both of Grogan's attorneys on the statute of limitations issue, more specifically, on the issue of whether the attorneys acted with reasonable diligence on Grogan's behalf between the date of the accident and the date Grogan's claim was filed against defendant. Grogan's objection to the deposing of his attorneys was overruled, and both were deposed and named as defense witnesses for trial.

Thereafter, the statute of limitations issue was bifurcated and tried first. At the jury trial, again over Grogan's objection, the defendant was permitted to call both of Grogan's attorneys as defense witnesses. Both attorneys remained as counsel throughout the trial proceedings and continue to represent Grogan in this appeal.

Following a trial on the bifurcated issue, the jury found that plaintiffs' cause of action had accrued on January 21, 1987, the approximate date when plaintiff had retained attorney Peterson. The trial court, applying a two-year statute of limitations to the jury's finding, ruled that plaintiffs' claims were time-barred. Accordingly, it dismissed plaintiffs' complaint and entered judgment in favor of defendant.

### I.

■ We first address both plaintiffs' claim that the trial court erred in applying a two-year statute of limitations instead of the three-year statute statute of limitations set forth in the Colorado Automobile Accident Reparations Act, § 10–4–701, et seq., C.R.S.

(1987 Repl.Vol. 4A) (the No–Fault Act). We disagree with plaintiffs' contention.

Generally, tort actions must be commenced within two years after the cause of action accrues. Section 13–80–102(1)(a), C.R.S. (1987 Repl.Vol. 9A). However, the General Assembly has created an exception for "[a]ll actions under the Colorado Auto Accident Reparations Act"; such actions must be commenced within three years after the cause of action accrues. Section 13–80–101(1)(j), C.R.S. (1987 Repl.Vol. 4A).

Here, the theory of Grogan's lawsuit was that defendant negligently overfilled his propane tank. It did not fall "under" the No–Fault Act because defendant was not an owner, user, or operator of plaintiff's vehicle. Thus, the trial court properly concluded that plaintiffs' action was subject to the two-year statute of limitations governing torts. *See Jones v. Cox*, 828 P.2d 218 (Colo.1992); *Boyer v. Ito Packing Co.*, 837 P.2d 773 (Colo. App.1992) (plaintiff's action against defendant for negligent packing of the contents of a truck was a tort action to which a two-year statute of limitations applied).

### II.

Plaintiffs next claim the trial court improperly instructed the jury on when a cause of action accrues. Again, we disagree.

A cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence. Section 13–80–108(1), C.R.S. (1987 Repl.Vol. 6A). *See Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo.1984) ("[T]he statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another."). *See also Jones v. Cox, supra.*

■ The form of the instructions given at trial is within the discretion of the trial court. *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992). Parties are entitled to an instruction embodying their theory of the case if there is evidence in the record to support it. *Carter v. Lovelace*, 844 P.2d 1288 (Colo.App.1992).

At trial, the court instructed the jury as follows:

> Ronald Grogan's claims against the defendant Lorelei Taylor are deemed to accrue on the date that both his physical injuries and their cause were known or should have been known to him or his attorneys by the exercise of reasonable diligence. However, it is not necessary for the defendant to prove that Ronald Grogan or his attorneys knew the specific acts of the *alleged negligence by this defendant* or others or that they knew the details of the *facts necessary to prove the claims against this defendant* or others. It is enough that the plaintiff or his attorneys knew, or may be reasonably charged with knowledge of, sufficient facts to be aware that a claim existed more than two years before it was filed. (emphasis added)

■ Plaintiffs claim there are two errors in this instruction: (1) the first sentence improperly imputes responsibility to plaintiffs' attorneys; and (2) the rest of the instruction is erroneous in that it should state that accrual occurs when a plaintiff discovered, or should have discovered, that his injuries *were caused by defendant.*

Here, the first sentence of the instruction tracks the language of § 13–80–108(1). The additional language embodied defendant's theory which was that plaintiff's attorneys did not use reasonable diligence. We perceive no error in that sentence.

■ Nor do we find error in the last two sentences of the instruction. Although it could have been more specific, it adequately informed the jury the limitations period began to run against this defendant when the plaintiff or his attorneys had reasonable notice that this claim existed, that is, when plaintiff or his attorneys had sufficient facts from which they reasonably could conclude Grogan's injury was caused by the wrongful conduct of another. *See Mastro v. Brodie, supra.*

### III.

■ The next contention is made only by plaintiff State of Colorado. It asserts that the trial court erred in dismissing *its* claim based on the statute of limitations defense because the statute does not apply to the State of Colorado. Under these circumstances, we agree.

■ A statute of limitations does not run against a public entity unless the statute specifically or by necessary implication so provides. *Berkeley Metropolitan District v. Poland,* 705 P.2d 1004 (Colo.App.1985).

Here, there is no specific provision that would make the two-year statute of limitations applicable to the state suing to recover medical benefits paid. In reaching this conclusion, we reject defendant's contention that *Colorado Springs v. Timberlane Associates,* 824 P.2d 776 (Colo.1992) requires a different result.

There, our supreme court held that statutes of limitation run against *local governments* except when the General Assembly expressly authorizes otherwise. The court did not address whether statutes of limitation run against the state.

Thus, we conclude the trial court erred in dismissing the State of Colorado's claim for medical benefits based upon defendant's statute of limitation defense, and, on remand, the court should reinstate the State's cause of action.

### IV.

Plaintiff Grogan next contends the trial court erred in finding attorneys Peterson and LeHouillier were necessary witnesses and in allowing defendant to call them as witnesses at trial. He argues that the trial court's ruling was unfair to him because it placed his attorneys in the untenable position of being forced to supply testimony adverse to their client and in violation of certain ethical rules.

We disagree that the trial court erred in finding Grogan's attorneys were necessary witnesses or in allowing them to be called as defense witnesses at trial. However, we agree that the trial was fundamentally unfair to Grogan and that he is entitled to a new trial.

## A.

Initially, we recognize that our supreme court has exclusive jurisdiction over attorney discipline matters and the interpretation of ethical rules governing their conduct. *See* C.R.C.P. 201 and 241. Nevertheless, we are unable to decide the issues raised by the parties in this appeal without considering the then-applicable portions of the Code of Professional Responsibility; the recently adopted Colorado Rules of Professional Conduct, which became effective January 1, 1993; and relevant supreme court decisions interpreting those ethical standards. *See Gold Rush Investments v. Ferrell,* 778 P.2d 297 (Colo.App.1989).

In *Williams v. District Court,* 700 P.2d 549, 553 (Colo.1985), our supreme court considered the myriad legal and ethical considerations that "necessarily arise when an attorney of record is subpoenaed by opposing counsel in order to testify against the subpoenaed attorney's client in a pending trial."

There, the court discussed the Code of Professional Responsibility Canons 5 and 7, which required lawyers to exercise independent professional judgment on behalf of a client and to represent their clients zealously within the bounds of the law. The court noted that:

> A lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both roles. . . . [T]he lawyer is placed in the unseemly position of arguing his own credibility to the jury. . . . Obviously, a lawyer's duty to exercise independent judgment on behalf of his client will be even more seriously jeopardized when the lawyer is called as a witness to give testimony *adverse* to his client.

*Williams v. District Court, supra,* 700 P.2d at 553 (original emphasis).

Code of Professional Responsibility DR 5–102(B), then in effect, was also "critical" to the court's analysis. That rule stated:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness *other than on behalf of his client,* he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. (emphasis added)

Ultimately, the *Williams* court concluded that an attorney may subpoena opposing counsel to testify adversely to his client but only after showing that: (1) opposing counsel's testimony will be actually adverse to his or her client; (2) the evidence sought to be elicited from the lawyer will likely be admissible at trial under the controlling rules of evidence; and (3) there is a compelling need for such evidence, which need cannot be satisfied by some other source.

■ Applying that guideline here, the trial court found that all of the required elements of the *Williams* test were satisfied and there is ample record support for that finding. First, Peterson's and LeHouillier's testimony had the potential to be adverse to Grogan's interest. And, in fact, the heart of the defense was that the attorneys had failed to exercise reasonable diligence during the investigatory phase and thus had failed to file Grogan's lawsuit on time.

Secondly, the evidence sought to be elicited from Grogan's lawyers was highly relevant and likely to be admissible at trial. Third, the defense showed a compelling need for such evidence because only Peterson and LeHouillier had firsthand knowledge about the efforts made to investigate the case between the date they were retained and the date the case was filed against this defendant.

Thus, the trial court did not err in denying Grogan's motion to quash the subpoenas served on his attorneys, or in allowing the defendant to subpoena and call both attorneys as defense witnesses at trial.

## B.

■ Defendant correctly notes that, although she subpoenaed and called Grogan's attorneys as defense witnesses at trial, she never moved to disqualify them as counsel. Nor did Peterson and LeHouillier ever move to withdraw as Grogan's counsel. Based upon these uncontested facts, therefore, defendant asserts that the trial court's correct resolution of the *Williams* issue ends our inquiry. We do not agree.

In *Williams, supra,* 700 P.2d at 555, the supreme court also stated:

Although the prosecution may not have taken the step of actually filing a formal motion to disqualify a defense attorney subpoenaed as a prosecution witness for trial, *the act of subpoenaing defense counsel is itself, in our opinion, the functional equivalent of a motion to disqualify.* (emphasis added)

The court thus recognized that: "[A] lawyer will rarely, if ever, be able to effectively serve as an advocate and give testimony adverse to his client in the same proceeding." *Williams v. District Court, supra,* 700 P.2d at 554. *See Riley v. District Court,* 181 Colo. 90, 95, 507 P.2d 464, 466 (1973) ("It is obvious that a lawyer cannot act as an advocate on behalf of his client, and yet give testimony adverse to the interests of that client in the same proceeding."). *See also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 339 (1975) (Any doubt that the lawyer has about the answer to the ethical question, whether it arises when employment is tendered or after representation has been undertaken, should be resolved in favor of the lawyer's testifying and against his becoming or continuing as counsel).

Thus, it is irrelevant that defendant did not formally attempt to disqualify Peterson and LeHouillier, that defendant had no duty to request their withdrawal, or that the two attorneys themselves did not move to withdraw. The defendant's act of successfully subpoenaing those attorneys to testify against their client constituted a motion to disqualify. *Williams v. District Court, supra,* 700 P.2d at 554. ("Indeed, the use of the subpoena power solely as a contrivance to disqualify opposing counsel could itself constitute unprofessional conduct prejudicial to the administration of justice in violation of [Code of Professional Responsibility] DR 1–102(A)(5).").

█ Once the trial court made the necessary finding under *Williams* that the attorneys' testimony would be adverse to Grogan, the lawyers were duty bound to withdraw under Code of Professional Responsibility DR 5–102(B). And, upon their failure to do so, under *Williams,* the trial court was re-quired to disqualify them from proceeding further on Grogan's behalf, unless they were able to show an exception to the ethical rules allowing them to continue. *See Murphy v. People,* 863 P.2d 301 (Colo.1993) ("[W]e also seriously question ... the failure of appointed counsel to file a motion to withdraw from the case ...; a lawyer shall withdraw from the representation of a client if the representation will result in violation of the rules of professional conduct....").

The opening brief filed by the attorneys for Grogan states the reason for their failure to withdraw as follows:

The plaintiff considered having both Peterson and LeHouillier withdraw, however, due to the complexity of the case and the additional costs and delay associated with such a course, this option was too onerous. *See* DR 5–101(B)(4).

Counsel's reliance on Code of Professional Responsibility DR 5–101(B)(4) is misplaced. That rule allowed counsel to remain in a case with the consent of his client after full disclosure if withdrawal "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." However, the exceptions contained in that rule applied only if the lawyer was being called as a witness *on behalf of his client. See* Code of Professional Responsibility DR 5–102(A).

█ Here, the lawyers were being called as adverse witnesses to Grogan and the critical rule was Code of Professional Responsibility DR *5–102(B).* That rule contained no such exceptions and did not allow a lawyer-adverse witness to remain as counsel, even after full disclosure and even with the client's consent. In other words, under Code of Professional Responsibility DR 5–102(B), if a lawyer was called as a witness "other than on behalf of his client," once it became "apparent that [the lawyer's] testimony [was] or may [have been] prejudicial to his client," the lawyer was *required* to withdraw. Such was the case here. *See Murphy v. People, supra.*

Accordingly, we conclude that the trial court erred in not disqualifying Grogan's attorneys once it became apparent they would be called to testify adversely to Grogan.

Nor can this error be viewed as harmless. In fact, the degree of prejudice to Grogan and the tactical advantage received by the defendant from having these attorneys remain in dual roles as Grogan's attorneys and as key defense witnesses is apparent from defense counsel's closing argument:

I want to be perfectly clear: *Nobody is blaming Mr. Grogan for the late filing of this lawsuit* against [the defendant]. No one is claiming he violated the statute of limitations. He didn't violate it; *his attorneys did.*

You think that because you come back and you find that the statute of limitations has been violated and that Mr. Grogan's claim or claims against [the defendant] have to be dismissed ... don't think that Mr. Grogan's (sic) being punished.... *He still has a cause of action against his attorneys.* They blew the statute. They committed malpractice. *That's where his remedy lies.* (emphasis added)

Although it is impossible to predict whether the outcome of the statute of limitations portion of the trial would have been different if Grogan had been represented by independent counsel, it is apparent that by intermingling the functions of advocate and witness, these lawyers' effectiveness in both roles was diminished. They were placed "in the unseemly position of arguing [their] own credibility to the jury." *Williams v. District Court, supra,* 700 P.2d at 553. And, given their multiple conflicting roles, their ability to exercise independent judgment on Grogan's behalf was seriously jeopardized. For example, their effectiveness in making strategic judgments was impaired because they had to decide when and whether to object to the defendant's evidence of, and arguments about, their own conduct.

Finally, because it can be inferred that the jury necessarily rejected the testimony of these attorneys in reaching their verdict, it is reasonable to infer that their credibility with the jury as Grogan's advocates also was damaged. As one legal commentator has stated:

*[I]n fairness to his client,* a lawyer who will be a witness should not be converted into a more interested and thus a less effective witness by becoming an advocate as well.

[J]ustice in our adversary system of litigation is dependent upon the partisanship of the advocate and the cross-examination of witnesses. The adversary system is at its best when each litigant is represented equally well by a skillful, partisan advocate who discovers and uses every witness and every scrap of evidence helpful to the client's cause, and who champions the client's position as strongly as possible under the evidence and the law. When the advocate has a choice between an interested and a disinterested witness, other factors being equal, he selects the disinterested witness; for by cross-examination the bias of the interested witness can be developed, to the client's detriment in the eyes of the jury. (emphasis added)

Sutton, *The Testifying Advocate,* 41 Tex. L.Rev. 477, 482–83 (1963).

For these reasons, we conclude that the trial court's failure to disqualify Grogan's attorneys severely prejudiced Grogan and resulted in a trial that was fundamentally unfair to him. Thus, the judgment must be reversed and a new trial granted. *See* C.A.R. 1(d); *Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 238 (Colo.1984) (appellate court may notice errors appearing in the record, "especially when these errors are of a fundamental character affecting the reliability of the judgment itself."). *See also Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 587 (Colo.1984) (court addressed issue on its own motion "to prevent a manifest injustice to a litigant and to assure an appellate resolution of a controversy in accordance with correct principles of law"); *cf.* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 2558 (1971) (appellate court may reverse for plain error not objected to when necessary to prevent a miscarriage of justice).

### C.

Since a new trial is necessary, we also must consider the applicability of the Colorado Rules of Professional Conduct to this case. As previously noted, those rules were adopted by our supreme court after this trial

and became effective January 1, 1993. Certain of those rules differ from the Code of Professional Responsibility which previously governed this case.

Colorado Rules of Professional Conduct Rule 3.7 now addresses the same subject matter previously discussed in Canons 5 and 7, and DR 5–102; that is, when a lawyer may act as a witness. Rule 3.7 no longer specifically distinguishes between lawyers who testify on behalf of and adversely to their clients. Rather, it now states:

(a) A lawyer shall *not* act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: ... (3) *disqualification of the lawyer would work substantial hardship on the client.* (emphasis added)

Thus, the requirements of new Colorado Rules of Professional Conduct Rule 3.7 do not appear to be as stringent as the absolute prohibition contained in Code of Professional Responsibility DR 5–102(B).

The comment to this rule also recognizes that the combination of roles, *i.e.,* advocate and witness, may create an incurable conflict of interest which cannot be waived. That issue must be determined by Colorado Rules of Professional Conduct Rule 1.7.

Colorado Rules of Professional Conduct Rule 1.7, the new general conflict of interest rule, states that:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interest, unless:

. . . .

(2) the client consents after consultation.

. . . .

(c) For the purposes of this Rule, *a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation* under the circumstances of the particular situation. (emphasis added)

■ Here, since the thrust of the defense is that attorneys Peterson and LeHouillier allowed the statute of limitation to run, they clearly remain adverse witnesses to their client. And, presumably, if indeed the jury on remand again finds the statute of limitations has run because of their failure to exercise reasonable care, as was urged by defense counsel in his closing argument, Grogan may have ·an action against his own counsel. Under these circumstances, it is inconceivable that a disinterested lawyer would conclude that Grogan should agree to their continued representation.

Accordingly, we hold that, under Colorado Rules of Professional Conduct Rule 1.7, the conflict of interest between Grogan and his attorneys is not waivable and that Grogan's consent to continued representation by these attorneys in this proceeding cannot be validly obtained.

In summary, we interpret Colorado Rules of Professional Conduct 3.7 to require that trial courts follow certain procedures in future cases in which the court, under *Williams,* permits one party to call the opposing party's attorney as an adverse witness against his or her own client.

■ In such cases, the trial court must treat the act of subpoenaing counsel as "the functional equivalent of a motion to disqualify." *Williams v. District Court, supra.* Thus, if an attorney remains as counsel after having been named as an adverse witness to his or her client, the trial court must conduct a hearing and make appropriate findings as to whether ·disqualification is required or whether any exception to the disciplinary rules would allow this to occur. That procedure must be followed even when the subpoenaed attorney-adverse witnesses have not moved to withdraw as counsel and the opposing party has not moved for an order disqualifying them.

Here, in view of our resolution of the conflict issue and our conclusion that disqualification of the attorneys is required, we do not reach the issue of whether the requirements of the new "substantial hardship" exception of Rule 3.7 could be met in this case. *Cf. Warrilow v. Norrell,* 791 S.W.2d 515 (Tex. Civ.App.1989).

## V.

Since other issues raised may recur on retrial, we address them here.

Plaintiffs claim the trial court erred in several evidentiary rulings.

## A.

■ Plaintiffs contend the court abused its discretion in allowing defendant's expert witness to explain to the jury what a statute of limitations is and to testify about when a cause of action accrues. Plaintiffs argue this testimony improperly invaded the province of the trial court as the giver of law. We agree.

■ Expert testimony is admissible if it is based upon special knowledge that will assist the jurors in understanding the facts and determining the issues. *People in re Martinez*, 841 P.2d 383 (Colo.App.1992). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." CRE 704. *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (an expert witness is permitted wide latitude to offer opinions).

■ The trial court has broad discretion to determine the admissibility of expert testimony. And, absent an abuse of that discretion, the trial court's admission of such evidence will not be disturbed on review. *People in re Martinez, supra.* We also recognize that there can be a fine line between impermissible expert testimony about legal issues and permissible expert testimony about a standard of care or an expert's conclusion based upon mixed questions of facts and law; for example, insanity or competency. Nevertheless, it is within the province of the trial court and not the expert witnesses to tell the jury what the law is. *See Specht v. Jensen*, 853 F.2d 805 (10th Cir.1988).

Here, defendant's expert witness, an attorney, explained what a statute of limitations is, and its purpose. However, he also went on to testify that a tort action:

> [B]egins to accrue when a party knows or should have known by the exercise of rea-

sonable diligence that they had suffered injury or that the cause of the injury was the conduct or a wrongdoing of someone who violates civil law. Injury, in the sense that it's used and interpreted by our supreme court, injury means both the physical and mental injury and the legal injury which is caused by the wrongful conduct of someone else.

■ Thus, the expert witness' testimony did more than merely aid the jury in understanding what a statute of limitations is, and what "accrual" means. It invaded the province of the court as the giver of law. As the Court of Appeals for the Tenth Circuit stated:

> When an attorney is allowed to usurp [the trial court's] function, harm is manifested in at least two ways. First ... the jury may believe the attorney-witness ... is more knowledgeable than the judge in a given area of the law.... Second, testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same.... It can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court.

*Specht v. Jensen, supra*, 853 F.2d at 809.

Accordingly, on retrial, the trial court should instruct the jurors to base their verdict on the law as given by the court, and should instruct them as to what the law is. It should not allow either party's expert to do so. *Compare Specht v. Jensen, supra, with Hines v. Denver & Rio Grande Western R.R. Co.*, 829 P.2d 419 (Colo.App.1991) (court did not err in allowing expert witness to express opinion that plaintiff's conduct was negligent).

## B.

Plaintiffs next claim the court erred in allowing into evidence testimony concerning

Grogan's alcohol consumption on the day of the accident. Plaintiffs contend such testimony was irrelevant and prejudicial.

■ Evidence is relevant if it tends to make the existence of a material fact more or less probable than it would be without the evidence. *Quigley v. Jobe*, 851 P.2d 236 (Colo.App.1992).

■ The determination of whether proffered evidence is relevant is within the sound discretion of the trial court, and an abuse of that discretion will be found only when such determination is manifestly arbitrary or unreasonable. *See Boettcher & Co. v. Munson*, 854 P.2d 199 (Colo.1993).

At trial, defendant introduced testimony concerning Grogan's alcohol consumption to show that it impaired his ability to remember the events leading up to the explosion. According to defendant, Grogan's attorneys should not have relied exclusively upon Grogan's memory and their decision to do so evidenced their lack of reasonable diligence.

We conclude the evidence was arguably relevant, provided that defendant can lay a proper foundation, that is, if defendant can show a reasonable basis for concluding the amount of alcohol allegedly consumed by Grogan was likely to have caused an impairment of his memory.

We also note that, here, the court instructed the jury to consider evidence of Grogan's alcohol consumption only as it relates to his memory of the events. If evidence of alcohol is admitted upon retrial, the court should give a similar limiting instruction.

## VI.

### CROSS-APPEAL

■ Defendant claims on cross-appeal that the trial court erred in denying her motion for summary judgment. However, the denial of a motion for summary judgment may not be considered on appeal after final judgment. *See Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981); *Askew v. Gerace*, 851 P.2d 199 (Colo.App. 1992).

The judgments entered in favor of defendant, Lorelei A. Taylor, d/b/a Rocky Mountain Plateau, and against plaintiffs Ronald Grogan and the State of Colorado are reversed, and the cause is remanded for a new trial and with directions to the trial court to disqualify plaintiffs' counsel.

PIERCE and CRISWELL, JJ., concur.