Kenneth SHOOTMAN, individually and as an agent of Power Motive Corporation, and Power Motive Corporation, Petitioners,

v.

DEPARTMENT OF TRANSPORTATION, State of Colorado, Respondent.

No. 95SC84.

Supreme Court of Colorado,
En Banc.

Nov. 4, 1996.

Rehearing Denied Dec. 9, 1996.

The Law Firm of Mike Hilgers, Mike Hilgers, Wheat Ridge, for Petitioners.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor Gener-

al, Garth C. Lucero, Deputy Attorney General, Charlotte R. Robinson, First Assistant Attorney General, Michael E. King, Assistant Attorney General, Civil Litigation Section, Denver, for Respondent.

Justice LOHR delivered the Opinion of the Court.

The issue in this case is whether the State of Colorado (State) is exempt from statutes of limitation under the doctrine of *nullum tempus occurrit regi* (time does not run against the king). The State brought an action against the driver and the owner of a truck to recover for damage the truck caused to a highway tunnel wall. The trial court granted the State's motion for summary judgment based on the defendants' admission of negligence, notwithstanding that the statute of limitation for tort actions had run before the State brought suit. The trial court held that the State's action was not time-barred because the State is not subject to statutes of limitation under the *nullum tempus occurrit regi* doctrine. The Colorado Court of Appeals affirmed the trial court. *Department of Transp. v. Shootman,* No. 94CA0809, slip op. at 1–2 (Colo.App. Dec. 15, 1994). We granted certiorari and now reverse the judgment of the court of appeals with directions to reverse the trial court's judgment and remand for additional proceedings consistent with this opinion.

## I.

There is no dispute as to the material facts. On March 14, 1991, Kenneth Shootman was driving a tractor/trailer owned by Power Motive Corporation (Power Motive) and transporting an oversized load when the vehicle struck one of the walls in the south bore of the Eisenhower–Johnson Memorial Tunnel (Tunnel). The accident damaged five wall-tile panels in the Tunnel.

Power Motive's insurer wrote the Department's masonry contractor on August 29, 1991, and noted that the insurer would pay $28,000 as the agreed amount for repair of the Tunnel. Thereafter, an attorney for Shootman and Power Motive, William H. Short, transmitted a proposed release agreement to the Colorado Department of Transportation (Department) by a letter dated April 7, 1992, based on his understanding of a negotiated settlement involving a liability release by the Department in exchange for a $28,000 payment. Short sent a follow-up letter, along with a copy of the proposed release agreement, to the Department on May 13, 1992. On August 17, 1992, Short sent the Department a letter requesting a progress report and indicating that he wished to close the matter. Short then sent another letter to the Department on September 15, 1992, noting that "[t]o date, I have heard nothing from you," and requesting a status report "so that we may move this matter towards conclusion." On October 7, 1992, Short wrote the Department again after learning that the costs of repair were mounting because of the Department's delay and reconsideration of the method of repair. In that letter, Short expressed the view that the Department should absorb any such increased costs, and reminded the Department that "my client has been ready, willing and able to settle for several months now, awaiting only your preparation or approval of a Release." The Department billed Power Motive's insurer for $28,000 on January 22, 1993, and Short wrote the Department on February 12, 1993, indicating that Power Motive's insurer would pay the $28,000 "in exchange for a fully executed release." Short included with the offer a copy of the release agreement that he first mailed to the Department on April 7, 1992. The parties did not communicate again until after the two-year statute of limitation for tort actions set forth in section 13–80–102(1)(a), 6A C.R.S. (1987), had expired.

After these extensive negotiations did not lead to an executed settlement, the Department brought suit against Shootman and Power Motive in Summit County District Court on April 30, 1993. The complaint contained four claims for relief: (1) a general negligence claim; (2) a claim for liability involving operation of a permitted oversize-load vehicle pursuant to section 42–4–411, 17 C.R.S. (1984); (3) a Colorado Auto Accident Reparations Act claim pursuant to section 10–4–701, 4A C.R.S. (1973); and (4) a liquidated debt claim. The Department sought

approximately $28,000 in damages plus interest.

Shootman and Power Motive answered, admitting negligence but asserting that the State's claims were barred either by the two-year statute of limitation for tort actions in section 13–80–102(1)(a), 6A C.R.S. (1987), or by the doctrine of laches. Shootman and Power Motive also contended that the Department's second, third, and fourth claims for relief either failed to state a claim or were subsumed in the negligence claim. Both the Department and the defendants moved for summary judgment. The Department argued that the doctrine of *nullum tempus occurrit regi* (*nullum tempus*) precluded application of the statute of limitation to the State, and that Shootman and Power Motive had already admitted negligence. In the alternative, the Department asserted that its Colorado Auto Accident Reparations Act claim was subject to a longer three-year statute of limitation, § 13–80–101(1)(j), 6A C.R.S. (1987), so that even if applicable to the State, the two-year statute of limitation did not bar the Colorado Auto Accident Reparations Act claim. Finally, the Department advanced a second alternative argument that a genuine issue of material fact existed concerning whether Shootman and Power Motive were estopped from asserting the statute of limitation defense because of alleged settlement representations.

The trial court did not address the Department's two alternative arguments. Instead, the court held that the State was not subject to statutes of limitation pursuant to the *nullum tempus* doctrine. The trial court therefore entered summary judgment in favor of the Department on its first, second, and third claims, and the Colorado Court of Appeals affirmed. *Shootman,* slip op. at 1–2. We granted certiorari to review the court of appeals' judgment.[1]

## II.

Shootman and Power Motive maintain that the State's action is barred by the statute of limitation set forth in section 13–80–102(1)(a), which establishes the period within which tort actions must be brought:

> (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
>
> (a) Tort actions, including but not limited to actions for negligence....

§ 13–80–102(1)(a), 6A C.R.S. (1987). In response, the State asserts an exemption from all statutes of limitation pursuant to the doctrine of *nullum tempus*. The trial court and the court of appeals agreed with the State, and based their judgments on the *nullum tempus* doctrine. The dispositive issue in this case for the purpose of certiorari review, therefore, is the continued vitality of the *nullum tempus* doctrine in Colorado.

■ As we noted in *Colorado Springs v. Timberlane Associates,* 824 P.2d 776, 777 (Colo.1992), "[t]he origin of governmental immunity from statutes of limitations is found in the English common law rule of '*nullum tempus occurrit regi,*' or, 'time does not run against the king.'" Under the *nullum tempus* rule, "no statute of limitations has been held to apply to actions brought by the crown, unless there has been an express provision including it." *United States v. Hoar,* 26 F. Cas. 329, 329 (C.C.D.Mass.1821) (No. 15,373); *accord, e.g., United States v. Thompson,* 98 U.S. 486, 489–90, 25 L.Ed. 194 (1878). "The *nullum tempus* doctrine was imported to the colonies as an incident of sovereignty when the colonies achieved their independence." *Timberlane,* 824 P.2d at 778; *accord, e.g., Thompson,* 98 U.S. at 487–88, 25 L.Ed. 194. In the states that continue to follow the *nullum tempus* doctrine, "when filing lawsuits in the posture of plaintiffs, [the states] are immune from statutes of limitations except where their respective legislatures have decided otherwise." *Timberlane,* 824 P.2d at 778.

---

**1.** We granted certiorari on the following issue, as reframed by this court:

Whether the State of Colorado was barred by the statute of limitations in section 13–80– 102(1)(a), 6A C.R.S. (1987), from asserting a claim against the petitioners.

Although the rule of *nullum tempus* may have had its roots in the prerogative of the crown, "the source of its continuing vitality where the royal privilege no longer exists is to be found in the public policy underlying the rule." *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). That public policy was expressed by Justice Story in 1821 as the "great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Hoar,* 26 F. Cas. at 329. This is the policy basis that courts have relied upon to apply the rule in more modern times. *E.g., Guaranty Trust,* 304 U.S. at 132, 58 S.Ct. at 788–89 (quoting above passage from *Hoar,* 26 F. Cas. at 329); *Timberlane* 824 P.2d at 778 (same).

In our earliest pronouncement on the subject, we indicated agreement with the doctrine of *nullum tempus* by stating that "[s]tatutes of limitation ordinarily do not apply to the State, but the legislature may make them applicable to the State if it sees fit to do so." *Dietemann v. People,* 76 Colo. 378, 383, 232 P. 676, 678 (1924). We express-

ly approved this language from *Dietemann* and applied the *nullum tempus* doctrine in *People v. Miller,* 90 Colo. 269, 270–71, 8 P.2d 269, 270 (1932) (claim by State to recover gasoline excise tax). We reaffirmed the doctrine in *State v. Griffith's Estate,* 130 Colo. 312, 316–17, 275 P.2d 945, 948 (1954) (claim by county department of public welfare against decedent's estate), and most recently in *Hinshaw v. Department of Welfare,* 157 Colo. 447, 451–55, 403 P.2d 206, 208–10 (1965) (same). *Accord, e.g., Berkeley Metro. Dist. v. Poland,* 705 P.2d 1004, 1007 (Colo.App. 1985). The question we face today is whether the *nullum tempus* doctrine remains valid in Colorado in view of our post-*Hinshaw* decisions in *Evans v. Board of County Commissioners of El Paso County,* 174 Colo. 97, 482 P.2d 968 (1971), and *Timberlane,* 824 P.2d 776.

■ This court abrogated long-standing principles of sovereign immunity in *Evans,* 174 Colo. at 100–06, 482 P.2d at 969–72. In that case, we announced our departure from the "inequitable and untenable doctrines" of sovereign and governmental immunity,[2] *id.* at 105, 482 P.2d at 972, because "the doctrines

---

**2.** Sovereign immunity and governmental immunity represent distinct legal concepts. "The term 'sovereign immunity' generally refers to the immunity of the state or federal government whereas the term 'governmental immunity' refers to *the immunity of all levels of government." Bertrand v. Board of County Comm'rs,* 872 P.2d 223, 224–25 n. 1 (Colo.1994); *accord, e.g., Burns v. City of Rockville,* 71 Md.App. 293, 525 A.2d 255, 257 (Ct.Spec.1987). The Supreme Court of Michigan summarized this difference in *Ross v. Consumers Power Co.*:

Although the concepts of "sovereign immunity" and "governmental immunity" are related, they have distinct origins and histories: "'[S]overeign' immunity and 'governmental' immunity are not synonymous. True, they have been over the years used interchangeably in decisions, but a delineation may be helpful. *Sovereign* immunity is a specific term limited in its application to the State and to the departments, commissions, boards, institutions, and instrumentalities of the State. The reason is the State is the only sovereignty in our system of government, except as the States delegated part of their implicit sovereignty to the Federal government.

\* \* \* \* \* \*

"Over the years, by judicial construction, this 'sovereign' immunity has been transmogrified into 'governmental' immunity and

made applicable to the 'inferior' divisions of government, *i.e.,* townships, school districts, villages, cities, and counties, but with an important distinction. These subdivisions of government enjoyed the immunity only when engaged in 'governmental' as distinguished from 'proprietary' functions."

420 Mich. 567, 363 N.W.2d 641, 649–50 (1984) (quoting *Myers v. Genesee County Auditor,* 375 Mich. 1, 133 N.W.2d 190, 191–92 (1965)) (emphasis in original); *accord, e.g.,* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 131, at 1051 (5th ed. 1984 & Supp.1988) ("The traditional rule was that municipalities held a governmental immunity in tort, but one different both in origin and scope from the "sovereign" or governmental immunity of the state. Since municipalities exhibited a corporate or proprietary face as well as a governmental face, the traditional immunity was narrower than the full range of municipal activities, protecting only the governmental activities and not the proprietary ones.").

are causing too great a degree of injustice," *id.* at 101, 482 P.2d at 970. We held that our precedents adopting and applying sovereign and governmental immunity "were pulled out of rather thin air," *id.* at 103, 482 P.2d at 971, and that those precedents "were wrong when announced and they are wrong today; repetition of them forty times or four hundred times doesn't make good law or cause the reasons for the doctrines to become any stronger," *id.* at 104, 482 P.2d at 972; *accord Timberlane,* 824 P.2d at 782 ("[W]e chose to abrogate [sovereign immunity in *Evans* ] because the common law philosophies justifying immunity from liability were shed when the Revolutionary War was won."). We therefore held in *Evans* that sovereign and governmental immunity were prospectively without force in Colorado unless the General Assembly should choose to readopt those doctrines selectively or in their entirety:

> The effect of this opinion and its two contemporaries[3] is simply to undo what this court has done and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so.[4]

*Evans,* 174 Colo. at 105, 482 P.2d at 972.

Despite our abrogation of sovereign and governmental immunity in *Evans, id.* at 100–06, 482 P.2d at 969–72, we did not have occasion to address the continued validity of the *nullum tempus* doctrine until we decided *Timberlane.* In that case, the City of Colorado Springs (City) underbilled Timberlane Associates for natural gas for almost six years before discovering its errors, and did not file suit to collect the debt until five years after discovering the billing errors. *Timberlane,* 824 P.2d at 776. The district court granted summary judgment in favor of the City, holding that the City was exempt from the otherwise-applicable statute of limitation based on *nullum tempus.* The court of appeals reversed and held that the City was subject to that statute of limitation because the City was acting in a proprietary or private capacity instead of a governmental or public capacity. *Colorado Springs v. Timberlane Assocs.,* 807 P.2d 1177, 1178–79 (Colo.App.1990); *see also Timberlane,* 824 P.2d at 776–77. On certiorari review, we rejected the court of appeals' test, which turned on the capacity in which the City was acting, as "fraught with inconsistencies in its application," and decided instead to abrogate the *nullum tempus* doctrine in the local government context. *Timberlane,* 824 P.2d at 781, 782–83. We held that "in keeping with the General Assembly's abrogation of sovereign immunity,[5] we can no longer cloak the State's political subdivisions in immunity from the running of statutes of limitations." *Id.* at 777. Instead, "the principles supporting abrogation of sovereign immunity from liability, and principles supporting statutes of limitations, mandate abrogation of immunity from limitations as applied to political subdivisions of the State, unless the General Assembly sees fit to do otherwise." *Id.* at 781.

 Although *Timberlane* was inherently limited to local governments because the defendant in that case was a municipal corporation, we find the principles underlying that decision equally convincing in the context of applying the *nullum tempus* doctrine to the

---

**3.** *Evans v. Board of County Commissioners of El Paso County,* 174 Colo. 97, 482 P.2d 968 (1971), involved a negligence claim against the Board of County Commissioners of El Paso County. In two companion cases decided the same day as *Evans,* and relying upon it, we held that sovereign or governmental immunity does not apply to the State, *Proffitt v. State,* 174 Colo. 113, 114, 482 P.2d 965, 965–66 (1971) (wrongful death action), or to a school district, *Flournoy v. School Dist. 1,* 174 Colo. 110, 111–12, 482 P.2d 966, 966–67 (1971) (same).

**4.** The General Assembly responded by restoring governmental immunity selectively by enacting the Colorado Governmental Immunity Act, which appears in its present form in §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1996 Supp.).

**5.** The General Assembly in a sense abrogated the doctrine of sovereign immunity by acknowledging our decision in *Evans v. Board of County Commissioners of El Paso County* and reintroducing governmental immunity selectively to accommodate both the concerns upon which *Evans* was based and the public policies counseling against unlimited governmental liability for acts of public employees. *See* § 24–10–102, 10A C.R.S. (1988).

State. The court of appeals, in the present case and in two of its prior cases, has construed our decision in *Timberlane* as limited to local governments and therefore inapplicable to the State. *Shootman*, No. 94CA0809, slip op. at 2; *Gibbs v. Colorado Mined Land Reclamation Bd.*, 883 P.2d 592, 596 (Colo. App.1994); *Grogan v. Taylor*, 877 P.2d 1374, 1379 (Colo.App.1993), *rev'd on other grounds*, 900 P.2d 60 (Colo.1995). In reaching these decisions, the court of appeals did not address the underlying policy concerns on which we focused in *Timberlane* to reject the rule of *nullum tempus* as applied to local governments. After further consideration of our analysis in *Timberlane*, we can identify no persuasive reason to preserve the doctrine of *nullum tempus* as applied to the State while rejecting it as applied to local governments. We are persuaded that the rationale underlying *Timberlane* is equally convincing in the context of application to the State.[6]

First, the *nullum tempus* doctrine as applied to the State was left with few underpinnings after we both abrogated sovereign im-

munity in relation to the State, *Evans*, 174 Colo. at 100–06, 482 P.2d at 969–72, and determined that *nullum tempus* is simply one aspect of sovereign immunity, *Timberlane*, 824 P.2d at 782. We began *Timberlane* by noting that "[w]e agree with the New Jersey Supreme Court's observation [in *New Jersey Educational Facilities Authority v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559, 561 (1991) ] that sovereigns now subject to suit should be required to bring their own in a timely manner." *Timberlane*, 824 P.2d at 777. We then discussed the approaches of other jurisdictions to the question of *nullum tempus*, and noted that the New Jersey Supreme Court "has rejected the *nullum tempus* doctrine *as applied to both the state and its agencies*, based on its relationship to sovereign immunity." *Id.* at 780 (emphasis added). We concluded by endorsing the New Jersey Supreme Court's analysis:

> We find persuasive, however, the New Jersey Supreme Court's reasoning that "the doctrine of nullum tempus is but an aspect of sovereign immunity."[7] The

**6.** Some states that have considered the question disavow the doctrine of *nullum tempus occurrit regi* in application to political subdivisions of the State, while allowing the State to retain the protection provided by the doctrine. *See, e.g., Mayor of Wilmington v. Dukes*, 157 A.2d 789, 794–95 (Del.1960); *State Dep't of Transp. v. Sullivan*, 38 Ohio St.3d 137, 527 N.E.2d 798, 800 (1988); *Burns v. Board of Supervisors*, 227 Va. 354, 315 S.E.2d 856, 858–60 (1984). These states employ different rationales in reaching that conclusion. For instance, the Ohio Supreme Court held that "the [*nullum tempus*] rule is an attribute of sovereignty only," which could not extend to inferior subdivisions of the state. *Sullivan*, 527 N.E.2d at 800. In contrast, the Virginia Supreme Court based its conclusion on a specific statutory provision that exempted the "'Commonwealth'" from statutes of limitation while subjecting certain "'agencies of the State'" to such limitations. *Burns*, 315 S.E.2d at 858 & n. 2 (quoting Va.Code § 8.01–231). The Delaware Supreme Court based its conclusion on a statutory provision as well. *See Dukes*, 157 A.2d at 795 (citing 17 Del. Laws, Ch. 207, Sec. 2). Other states distinguish subdivisions of the state from the state itself in the *nullum tempus* context and determine the applicability of the doctrine based upon whether a suit by a governmental subdivision asserts "private" or "proprietary" rights, in which case *nullum tempus* does not apply, or "public" or "governmental" rights, in which case it does. *See id.* at 794–95.

We noted in *Colorado Springs v. Timberlane Associates* that the "application [of the *nullum*

*tempus* doctrine] to the several states is well settled." 824 P.2d 776, 778 (Colo.1992). This should be read as an acknowledgment that in the great majority of the states *nullum tempus* has been applied to the states, *see, e.g., City of Shelbyville v. Shelbyville Restorium Inc.*, 96 Ill.2d 457, 71 Ill.Dec. 720, 723, 451 N.E.2d 874, 877 (1983); *Sullivan*, 527 N.E.2d at 799; *Oklahoma City Mun. Improvement Auth. v. HTB Inc.*, 769 P.2d 131, 133 (Okla.1988); *Commonwealth, Dep't of Transp. v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101, 102–03 (1981), and not as a reaffirmation of the applicability of *nullum tempus* to the State of Colorado. We took care in *Timberlane* to confine our holding to the issue then before us, i.e., the continuing vitality of the *nullum tempus* doctrine as applied to local governments. *See generally Timberlane*, 824 P.2d at 780–81, 783. The court of appeals read our decision in *Timberlane* as indicating a view that *nullum tempus* remains applicable to the State. *See Department of Transp. v. Shootman*, No. 94CA0809, slip op. at 2 (Colo.App. Dec. 15, 1994); *Gibbs v. Colorado Mined Land Reclamation Bd.*, 883 P.2d 592, 596 (Colo.App.1994); *Grogan v. Taylor*, 877 P.2d 1374, 1379 (Colo.App.1993), *rev'd on other grounds*, 900 P.2d 60 (Colo.1995). Properly read, we simply did not address that issue in *Timberlane*.

**7.** There is no general agreement as to whether the doctrine of *nullum tempus* is an aspect of sovereign immunity or whether the two doctrines are distinct and separate. *Compare, e.g., Wash-*

New Jersey Supreme Court abolished immunity from statutes of *limitations* based on its prior holding that immunity from *liability* did not accord with notions of fundamental justice endemic to a representative form of government. In *Evans*, we similarly concluded that sovereign immunity from liability was inequitable.

*Id.* at 782 (citations and footnote omitted; emphasis in original) (quoting *New Jersey*, 592 A.2d at 561). Having abrogated sovereign immunity, *see Evans*, 174 Colo. at 100–06, 482 P.2d at 969–72, and having recognized that *nullum tempus* is simply an aspect of sovereign immunity, *Timberlane*, 824 P.2d at 782, we have supplied the reasoning that leads directly to our conclusion today that the doctrine of *nullum tempus* no longer applies to the State. *See also New Jersey*, 592 A.2d at 561 ("Having yielded the greatest aspect of sovereign immunity, immunity from any suit at all, it would be anomalous in the extreme not to conclude that the sovereign who can now be sued should not have to bring its own suit in a timely manner.").[8]

Second, the policies underlying statutes of limitation support application of those limitations to the State. In *Timberlane*, we relied on principles that support statutes of limitation in abrogating the *nullum tempus* doctrine in the local government context:

> Evaluation of the rationales underlying statutes of limitations also supports our conclusion. We have held that statutes of limitations promote justice by discouraging delay and prohibiting the prosecution of stale claims. We agree with the observation of the Illinois Supreme Court that "[l]ong delays by the government in instituting suit, of course, cause harm to the defendant and are in the interest of no one." We perceive no substantial benefit in tolerating official tardiness....

824 P.2d at 782–83 (citations omitted) (quoting *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill.2d 457, 71 Ill.Dec. 720, 723,

---

*ington Suburban Sanitary Comm'n v. Pride Homes*, 291 Md. 537, 435 A.2d 796, 801 (1981) ("doctrine that limitations do not run against the State stems from the theory of sovereign immunity") *and New Jersey Educ. Facilities Auth. v. Gruzen*, 125 N.J. 66, 592 A.2d 559, 561 (1991) ("doctrine of *nullum tempus* is but an aspect of sovereign immunity") *and Bellevue School Dist. 405 v. Brazier Constr. Co.*, 103 Wash.2d 111, 691 P.2d 178, 186 (1984) ("once sovereign immunity was eliminated, the rule of *nullum tempus* became inapplicable") (citing *Jenkins v. State*, 85 Wash.2d 883, 540 P.2d 1363, 1368 (1975)) *with Commonwealth, Dep't of Transp. v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101, 104 (1981) ("[d]espite their common origin, the doctrines have been consistently recognized as distinct"). *See also District of Columbia v. Owens–Corning*, 572 A.2d 394, 401 (D.C.1989) (basis for *nullum tempus* doctrine evolved over time, originating in royal privilege and surviving the Revolution "more by force of habit or precedent than by reason" until courts subsequently supported the doctrine with independent public policy concerns). In *Colorado Springs v. Timberlane Associates*, we subscribed to the position adopted by the New Jersey Supreme Court that the *nullum tempus* doctrine is simply one aspect of sovereign immunity. 824 P.2d 776, 782 (Colo.1992) (citing *New Jersey*, 592 A.2d at 561).

To the extent that *Hinshaw v. Department of Welfare* is not in accordance with *Timberlane*, it is no longer good law. *Compare Timberlane*, 824 P.2d at 782 ("We find persuasive, however, the New Jersey Supreme Court's reasoning that 'the doctrine of *nullum tempus* is but an aspect of sovereign immunity.' ") (quoting *New Jersey*, 592

A.2d at 561) *with Hinshaw v. Department of Welfare*, 157 Colo. 447, 455, 403 P.2d 206, 210 (1965) ("Sovereign immunity was an established legal concept before statutes of limitation were adopted. They are not germane to the doctrine of sovereign immunity but are of statutory origin.").

**8.** Other states reject sovereign immunity but retain the protection of the *nullum tempus occurrit regi* doctrine for the State. *See, e.g., City of Shelbyville v. Shelbyville Restorium Inc.*, 96 Ill.2d 457, 71 Ill.Dec. 720, 723, 451 N.E.2d 874, 877 (1983); *State Dep't of Transp. v. Sullivan*, 38 Ohio St.3d 137, 527 N.E.2d 798, 800 (1988); *Oklahoma City Mun. Improvement Auth. v. HTB Inc.*, 769 P.2d 131, 134 (Okla.1988); *Commonwealth, Dep't of Transp. v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101, 103–05 (1981). These states generally take the position that government is avoiding liability in relying on sovereign immunity, whereas the government is seeking to preserve public rights when bringing an action, and the *nullum tempus* doctrine prevents such rights from being lost by the dilatory action of public officials. *Shelbyville*, 71 Ill.Dec. 720, 451 N.E.2d at 877; *Sullivan*, 527 N.E.2d at 800–01; *J.W. Bishop*, 439 A.2d at 104. Both liability avoidance and public rights preservation, however, provide protection for the public fisc. We are not persuaded that the distinction supplies an adequate basis in policy to justify retaining *nullum tempus* while rejecting sovereign immunity. *See New Jersey Educ. Facilities Auth. v. Gruzen*, 125 N.J. 66, 592 A.2d 559, 564 (1991) (expressing a like view).

451 N.E.2d 874, 877 (1983)); *see also, e.g., Jones v. Cox,* 828 P.2d 218, 224 (Colo.1992) ("The purpose of statutes of limitation is to promote justice, discourage unnecessary delay and forestall prosecution of stale claims."). As we said in the local government context, "the public will benefit from acquiring an ability to identify the time period in which local government claims can be brought." *Timberlane,* 824 P.2d at 783. The same is true both generally and as applied to claims by the State.

### III.

 In this case, the State did not comply with the statute of limitation set forth in section 13–80–102(1)(a), 6A C.R.S. (1987). We hold that the State cannot claim exemption from such statutes of limitation by relying on the doctrine of *nullum tempus occurrit regi.* The *nullum tempus* doctrine is simply one aspect of a State's sovereign immunity protection, *Timberlane,* 824 P.2d at 782, and we abrogated sovereign and governmental immunity in *Evans,* 174 Colo. at 100–06, 482 P.2d at 969–72. In abrogating sovereign and governmental immunity, we specifically noted that the legislature has the authority to restore sovereign and governmental immunity in whole or in part. *See id.* at 105, 482 P.2d at 972. The General Assembly recognized the abrogation and responded by passing the Colorado Governmental Immunity Act. § 24–10–102, 10A C.R.S. (1988) ("The general assembly also recognizes that the supreme court has abrogated the doctrine of sovereign immunity effective July 1, 1972, and that thereafter the doctrine shall be recognized only to such extent as may be provided by statute."). Nevertheless, the legislature has not reaffirmed the *nullum tempus* doctrine, despite *Evans* and our decision in *Timberlane,* 824 P.2d at 777–83, where we explicitly held that *nullum tempus* is but an aspect of sovereign immunity.[9] In addition, statutes of limita-tion promote justice by discouraging long delays, prohibiting the prosecution of stale claims, and providing closure to the parties. *E.g., Jones,* 828 P.2d at 224; *Colorado State Bd. of Medical Examiners v. Jorgensen,* 198 Colo. 275, 279, 599 P.2d 869, 872 (1979); *Rosane v. Senger,* 112 Colo. 363, 369, 149 P.2d 372, 375 (1944). We conclude that the foundation of the common law doctrine of *nullum tempus* as applied to the State has been so extensively eroded that the doctrine is no longer supportable. It is for the General Assembly to determine whether in the future, the State should be provided immunity from statutes of limitation, in whole or in part.

### IV.

We reverse and remand for proceedings consistent with this opinion. On remand, the trial court should rule on the motion for summary judgment filed by Shootman and Power Motive. In doing so, the court should consider the contentions by Shootman and Power Motive that the Department's second, third, and fourth claims fail to state claims for relief, are subsumed in the negligence claim, or are barred by the doctrine of laches. The court should also address the Department's arguments that its Colorado Auto Accident Reparations Act claim is subject to a longer three-year statute of limitation, and that Shootman and Power Motive are estopped from asserting the statute of limitation defense because of alleged settlement representations.

9. We recognize that the General Assembly has enacted some statutes of limitation that apply to types of claims peculiar to governmental entities. *E.g.,* §§ 5–6–113(1), –113(2), 2 C.R.S. (1992) (action by administrator of Uniform Consumer Credit Code to impose civil penalties on creditors for violations of Code); §§ 39–21–107(1), –107(2), 16B C.R.S. (1994) (action by Department of Revenue to impose tax penalties and interest); § 40–30–102, 17 C.R.S. (1993) (action on behalf of county school fund against railroad for penalties for failure to satisfy certain fireguard plowing obligations). This does not suggest any legislative consideration of whether generally applicable statutes of limitation should apply to the State.